## FORT SMITH *v.* HUNT.

### Opinion delivered July 2, 1904.

1. MUNICIPAL CORPORATIONS—POLICE POWER—LICENSE FEE.—While a city, after authorizing an electric company to erect its poles in the streets and to string wires thereon, cannot impose a rental charge upon such poles, an annual license fee of twenty-five cents upon each pole, imposed for the purpose of defraying the expenses of regulating and controlling the use of the same, is a reasonable exercise of the city's police power, and may be collected. (Page 562.)

2. SAME—A city cannot by contract divest itself of its police power. (Page 564.)

Appeal from Sebastian Circuit Court.

STYLES T. ROWE, Judge.

Reversed.                                            ]

*J. F. O'Melia,* for appellant.

Private interests are always made subservient to those of
the public.   144 Mass. 523; 59 Am. Rep. 113; Cooley, Const.
Lim. 137; 27 Ark. 467; Sand. & H. Dig. § § 5145-6; 1 Dillon,
Mun. Corp. § 89.   A city may pass such laws as are reasonably
within the scope of its authority not repugnant to the constitu-
tion.   31 Ark. 462; 1 Dill. Mun. Corp. § 316; 172 Mass.; 42 L. R.
A. 403.   License ordinances must be reasonable and not for the
purpose of raising revenue.   34 Ark. 603; 43 Ark. 82; 52 Ark.
301; 64 Ark. 152; 70 Ark. 221; 34 Ark. 603.   Ordinances are
presumed to be reasonable.   31 Ia. 105; 70 Ala. 361; 40 Mich.
258; 22 Fed. 701; 60 Pa. St. 445; 60 Cal. 78; 20 Tex. App. 210;
66 Ia. 249; 41 Mo. 547; 37 Ohio St. 45; 30 Wis. 316.   The ordi-
nance is reasonable.   12 Atl. 144; 23 Atl. 1070; 70 Ark. 300.

*Mechem & Bryant,* for appellee.

The ordinance is an explicit demand for rental of use of the
streets.   32 N. Y. 273; 40 La. Ann. 41; 148 U. S. 92; 70 Ark. 301.
A municipality cannot under any pretext add monetary demands
to the conditions of a grant which has been accepted and
performed by the grantee.   70 Ark. 301; 49 Ala. 363.

BATTLE, J.   This appeal grows out of the prosecution of
R. G. Hunt, general manager of the Fort Smith & Van Buren
Light & Transit Company, charged with the violation of an
ordinance of the city of Fort Smith.

The bill of exceptions shows that the cause was submitted
to the court sitting as a jury on the following agreed statement
of facts:

"First.   On February 12, 1894, the city of Fort Smith, by
ordinance No. 329, granted to the Fort Smith & Van Buren
Electric Street Railway, Light & Power Company, its legal repre-
sentatives, successors and assignees, the right to build, equip
and maintain on certain streets of said city an electric trolley
street railroad, and to erect and maintain an electric light plant

for lights, heat and power, and to enter upon the streets, alleys and avenues of said city and erect necessary poles and string wires thereon for the purpose of operating said railroad and light and power plant, for the service of private individuals and the public, this grant to exist for thirty years; provided that the position of the poles, wires, pipes, conduits, etc., shall be subject to all provisions of ordinance No. 300, except that the said company is exempt from section 6 of said ordinance No. 300.

"Second.  Whenever it may be necessary in the construction and operation of such lines and plants for said lines to cross each other, the electric wire shall not run nearer than five feet to the said telegraph or telephone wires, and such crossing shall be inspected and approved by the city engineer.  Before any company shall erect its poles in and along any street or alley, it shall submit the route of its supposed line to the city engineer, and all excavating, refilling and restoring of any pavement shall be done to the satisfaction of said city engineer at the expense of said company.

"Third.  The Fort Smith & Van Buren Light & Transit Company, in erecting its poles, stringing its wires, excavating, refilling and restoring of pavement have submitted the route of said improvement to the city engineer, who has inspected said work from time to time, and the said company has never paid the city or city engineer any compensation for said inspection, has continued to place poles and string wires since the passage of ordinance No. 525, and refused to abide by the terms of said ordinance.

"Fourth.  This grant was made upon the condition that the grantee would have the street railroad in practical operation within six months from its date, and the light and power plant within eighteen months from its date, and that upon a failure to construct within said time or to maintain the same thereafter the privileges granted by the ordinance were forfeited.

"Fifth.  The ordinance provided the character of wires, poles and appliances to be used, fixed the rate of fare on the railway as not to exceed 5 cents, and required the company to carry uniformed policemen free and fixed the minimum charge for incandescent and arc lights.

"Sixth. It is also provided that the company should pay a tax on all its property in the city which is taxable by law at the same rate of taxation imposed upon the property of any other citizen.

"Seventh. The grantee complied with said ordinance by building, equipping and operating its railroad and light, heat and power plant within the time designated in the ordinance.

"Eighth. On the .... day of .........., the said Fort Smith & Van Buren Electric Street Railway & Power Company consolidated with the Fort Smith Gas Light Company, under the name of the Fort Smith & Van Buren Light & Transit Company, which thereby became the owner of the street railway and electrical light, heat and power plant and all the property, franchises and rights granted to said first mentioned corporation by the ordinance No. 329 aforesaid.

"Ninth. All poles belonging to said Fort Smith & Van Buren Light & Transit Company now standing upon the streets, avenues and alleys of said city, were erected by the owners of said street railroad and electric·light and power plant for the sole purpose of necessary use in the operation of the same.

"Tenth. The said grantee in said ordinance and the present owner of said street railway and said electric light, heat and power plant on or before the 19th day of March, 1900, had expended in said city, on the faith and under the terms of said ordinance, the sum of $100,000 in the erection and equipment of said street railway and said electric light, heat and·power plant.

"Eleventh. On March 19, 1900, the said city enacted ordinance No. 525, by which it required the owners of every electric light or street railway pole standing upon the street, avenue or alleys of said city to pay said city an annual license of 25 cents per pole. Said ordinance in terms exempted from its requirements all corporations having contracts with the city, so long as said contract is existing between such persons or corporation or company and the city, which required in their performance the putting of such poles in the streets. That the foregoing proviso only applies to such poles as are necessary and properly in use by such person, company or corporation in the fulfillment of his or its contract.

"Twelfth. It is further agreed that the whole or any section or sections of said ordinance may be considered by the court or introduced by either party, together with any other kind of evidence that either party may see fit to choose to offer.

"Thirteenth. The company had 779 poles in the streets on the 1st day of January, 1902, of which 65 were erected after the passage of ordinance No. 525, making a total of 779, without paying the sum of 25 cents for each pole, amounting to $194.75 per year.

"Fourteenth. It is agreed that the city engineer receive a salary of $83 1-3 per month, or $1,000 per year, for his services, which is paid by the city of Fort Smith, Ark.

"Fifteenth. The city has a chief of police who receives a salary of $83 1-3 per month, together with eight policemen who receive a salary of $60 per month each. The fire department has one chief on a salary of $41 2-3 per month with four regular firemen on a salary of $45 per month each, one foreman at $50, and one engineer at $60 per month, which is paid by the city.

"Sixteenth. The defendant is the general manager of the Fort Smith & Van Buren Light & Transit Company, and has neglected to comply with the said last mentioned ordinance by returning a statement of the number of poles which said corporation has in the streets, avenues and alleys of said city. By the terms of said last mentioned ordinance, if said corporation is liable to pay said charge, the defendant is subject to a fine of not less than $5 nor more than $25 for neglecting to make such statement annually. Upon the foregoing facts the sole question presented is whether the Fort Smith & Van Buren Light & Transit Company can be compelled by the plaintiff city, under its police power, to pay said pole license on the poles put in and maintained under said ordinances. If it can, defendant is guilty; if not, he is not guilty."

Section 1 of ordinance No. 525, which appellee violated, is as follows:

"Section 1. That every person and light, power company, street car company or other corporation who shall erect, maintain and use any pole or poles on any of the public streets and alleys of this city shall pay to the city annually, as a license therefor, a sum equal to 25 cents for each and every pole so erected.

maintained or used on said streets and alleys by such person, or by such telegraph, telephone, electric light, power company, street car company or other. corporation."

And the following sections are a part of ordinance No. 300:

*"Be it ordained by the City Council of the City of Fort Smith, Ark.:*

"Section 1. Any telegraph, telephone or electric light company duly incorporated according to law, doing or desiring to do business in the city of Fort Smith. is hereby authorized to set its poles, pins, abutments, wires and other fixtures along and across any public streets or alleys subject to the regulations hereinafter provided.

"Section 2. Whenever it is practicable to place the poles in and along an alley, instead of in and along a street, the practicability of which shall be submitted to the city engineer, the poles of such company shall be placed in and along said alley, instead of in and along said street; provided, however, that telegraph and telephone poles shall not be placed in and along the same alley with electric light poles. Whenever the poles of any such company are set in any alley, they shall be located as near the side line of the alley as practicable, and in such manner as to not incommode the public travel or the adjoining proprietors or residents. Whenever the poles of any such company are placed in and along any such street, the telephone and telegraph poles and wires shall not be placed on the same side of the street with the electric light poles and wires, and when placed in and along any street, they shall be placed in all cases on the outer edge of the sidewalk just inside the curbing, and in no case be 'so placed as to obstruct the drainage of the streets or to interfere with or damage in any way the curbstone, trees, or other private property upon the streets or alleys where such poles are erected, nor interfere with or obstruct the light or reflection of light from any public street light, as far as practicable.

"Section. 3. The poles used by any of said companies shall be of sound timber, and all poles hereafter put up shall be not less than five inches in diameter at the upper end. straight, shapely and of uniform size, neatly shaved or planed, and painted with one or more coats of lead and oil paint, each company using a different color. The telephone and telegraph wires shall run

at a height of not less than twenty-five feet above the grade of a
street or alley, except in the suburbs or residence portions of
said city, where they shall be run at a height of not less than
twenty feet above the grade of a street or alley; and the electric
light wire shall be placed at a height above the grade of a street
or alley not less than twenty feet. Whenever it may be necessary
in the construction and operation of such lines and plants for
said lines to cross each other, the electric wire shall not run
nearer than five feet to the said telegraph or telephone wire, and
such crossing shall be inspected and approved by the city engi-
neer, to whom notice of such intended crossing shall be given
by the company making such crossing before it is done; and the
telegraph and telephone wires shall not be nearer each other than
three feet.

"Section 4. Before any company shall erect its poles in and
along any street or alley, it shall submit the route of its sup-
posed line to the city engineer, and all excavating, refilling and
restoring of any pavement shall be done to the satisfaction of
said city engineer at the expense of said company.

"Section 5. The above several companies shall set and locate
their poles along their lines so as not to obstruct the streets,
alleys, gutters and drainage therein, or to damage public or
private property in said street or alley, and they may be required,
upon ten days' notice given by the mayor, to alter the location
of any pole or poles along the lines of said company so obstruct-
ing the streets, alleys and gutters and drains as to be injurious
to public or private property, and any violation of this section
shall be a misdemeanor, and punished as hereinafter provided."

Appellee contends that the 25 cents demanded by the city
of Fort Smith for each pole, under section one of ordinance No.
525, is "an explicit demand of rental for the use of the streets."
The ordinance requires every person and corporation, who shall
erect, maintain and use any pole or poles on any of the public
streets and alleys of Fort Smith to pay to the city, as a license
therefor, a sum equal to 25 cents for each of such poles. The
sum is required to be paid as a license. As used in the ordi-
nance, the word "license" means the sum paid for permission
to erect or maintain poles in the streets and alleys of the city,
for the purpose of defraying the expenses of regulating and

controlling the use of the same, under the police power of the city. This is necessary for the protection of the public against the electricity with which the wires on the poles may be charged, against the falling of the wires and poles, and the obstruction of · the public highway, and for other purposes. This is a duty the 'city owes to the citizen.

The rules and regulations for the government of those erecting and maintaining poles in Fort Smith, and the duties of the city engineer in respect thereto, are prescribed, in part, if not wholly, by ordinance No. 300. But this does not exhaust the police power of the city in respect to such poles. The city council may hereafter prescribe other rules and regulations for the same object. For the purpose of paying the expenses of enforcing such rules and regulations already in force, a license fee may be demanded and collected.

*Hot Springs Electric Light Co.* v. *Hot Springs,* 70 Ark. 300, is unlike this case. In that case this court merely held that the city of Hot Springs had no right to demand and collect a rental charge, for the use of the ground occupied by the poles of the light company.

The following words, used in *Fayetteville* v. *Carter,* 52 Ark. 301, 302, are applicable in this case: "The power to license and regulate, granted by the statute, was conferred solely for police purposes; and municipal corporations have no right to use it as a means of increasing their revenues. They can require a reasonable fee to be paid for a license. The amount they have a right to demand for such fee depends upon the extent and expense of the municipal supervision made necessary by the business in the city or town where it is licensed. A fee sufficient to cover the expense of issuing the license, and to pay the expenses which may be incurred in the enforcement of such police inspection or superintendence as may be lawfully exercised over the business, may be required. It is obvious that the actual amount necessary to meet such expenses cannot, in all cases, be ascertained in advance, and that 'it would be futile to require anything of the kind.' The result is, if the fee required is not plainly unreasonable, the courts ought not to interfere with the discretion exercised by the council in fixing it; and unless the contrary appears on the face of the ordinance requiring it, or is established by proper evidence, they should presume it reasonable."

The contract of Fort Smith with the Fort Smith & Van Buren Electric Street Railway & Transit Company in respect to the poles does not interfere with the exercise of the city's police power in this case. The state, much less the city, cannot divest itself of such power.

In *Beer Co.* v. *Massachusetts,* 97 U. S. 25, 33, Mr. Justice Bradley, in delivering the opinion of the court, said: "Whatever differences of opinion may exist as to the extent and boundaries of the police power, and however difficult it may be to render a satisfactory definition of it, there seems to be no doubt that it does extend to the protection of the lives, health, and property of the citizens, and to the preservation of good order and the public morals. The legislature cannot, by any contract, divest itself of the power to provide for these objects. They belong emphatically to that class of objects which demand the application of the maxim, *salus populi suprema lex;* and they are to be attained and provided for by such appropriate means as the legislative discretion may devise. That discretion can no more be bargained away than the power itself."

In *New Orleans Gas Co.* v. *Louisiana Light Co.,* 115 U. S. 650, 672, Mr. Justice Harlan, in behalf of the court, said: "The constitutional prohibition upon state laws impairing the obligation of contracts does not restrict the power of the state to protect the public health, the public morals, or the public safety, as the one or the other may be involved in the execution of such contracts. Rights and privileges arising from contracts with a state are subject to regulations for the protection of the public health, the public morals, and the public safety, in the same sense, and to the same extent, as are all contracts and all property, whether owned by natural persons or corporations."

Mr. Justice Shaw said, in *Commonwealth* v. *Alger,* 7 Cush. 84, that it was "a well settled principle, growing out of the nature of well ordered civil society, that every holder of property, however absolute and unqualified may be his title, holds it under the implied liability that his use of it may be so regulated that it shall not be injurious to the rights of the community. All property in this commonwealth is  *  *  *  held subject to these general regulations, which are necessary to the common good and general welfare."

Chief Justice Redfield, in *Thorpe* v. *Rutland & Burlington R. Co.* 27 Vt. 149, says: "This police power of the state extends to the protection of the lives, limbs, health, comfort and quiet of all persons, and the protection of all property within the state."

In *People* v. *Squire,* 107 N. Y. 593, 606, it is·said: "The right to exercise this [police] power cannot be alienated, surrendered or abridged by the legislature by any grant, contract or delegation whatsoever, because it constitutes the exercise of a governmental function, without which it would become powerless to protect those rights which it was especially designed to accomplish." *Powell* v. *Pennsylvania,* 127 U. S. 678, 683; *Butchers' Union Co.* v. *Crescent City Co.* 111 U. S. 746; *Toledo, Wabash & Western Ry. Co.* v. *City of Jacksonville,* 67 Ill. 37; Cooley, Const. Lim. (7th Ed.) 399, 400.

What has been said as to the state's right to divest itself of the police power applies with greater force to cities. The creature is not greater than its creator; and the state cannot delegate to the cities, its governmental agencies, greater power than it has.

Reverse and remand for a new trial.