## ARKANSAS–MISSOURI POWER CORPORATION v. CITY OF RECTOR, ARK.

### No. 13567.

Circuit Court of Appeals, Eighth Circuit.
Dec. 26, 1947.

Rehearing Denied Jan. 15, 1948.

P. A. Lasley, of Little Rock, Ark., (Ponder & Ponder, of Walnut Ridge, Ark., and Verlin E. Upton, of Rector, Ark., on the brief), for appellant.

Archer Wheatley, of Jonesboro, Ark., (T. A. French and Arthur Sneed, both of Piggott, Ark., and Berl S. Smith and Joe C. Barrett, both of Jonesboro, Ark., on the brief), for appellee.

Before GARDNER, THOMAS and JOHNSEN, Circuit Judges.

GARDNER, Circuit Judge.

This is an appeal from a judgment which enjoined appellant from completing the construction and energizing of a high voltage transmission line in the City of Rector, Arkansas, and which required appellant within thirty days to remove all wires and other material which is used exclusively for the transmission line described and

which constitutes no part of the distribution system of the City of Rector, Arkansas. The judgment was entered in an action brought by the City of Rector, a municipal corporation organized under the laws of Arkansas and its officers as plaintiffs against Arkansas-Missouri Power Corporation, a corporation organized under the laws of the State of Delaware. It was alleged in plaintiff's complaint that defendant was engaged in the sale and distribution of electric power and electricity to the public in a number of cities in the northeastern part of the State of Arkansas and the southeastern part of the State of Missouri and was so engaged in the sale of electric power and energy to the citizens of Rector, Arkansas; that the franchise under which defendant was operating within the City of Rector had expired on the 21st of January, 1945, but that it had been operating since that time in the City without any franchise or permit to do business therein; that the defendant was engaged in the construction of a high voltage transmission line through the corporate limits of the City designed to carry 33,000 volts of electricity; that defendant had not secured from the plaintiff any permit, contract or franchise to construct said line through the streets of the City and that it was without right or authority to enter upon the streets of the City for the purpose of constructing this high voltage transmission line; that the line as in process of construction runs along the side of the public school grounds and is very dangerous and unsightly; that the construction of the line will work irreparable injury to the streets and alleys and to the property lying adjacent to such streets and alleys over which the line is constructed and will constitute a nuisance upon public property in the City. The complaint contains appropriate allegations as to the inadequacy of plaintiff's remedy at law and prays for an injunction against constructing or maintaining the line and asks that defendant be required to remove any poles, lines or wires that have been used in the construction thereof. Defendant by its answer admits the allegations as to the corporate existence of itself and of the City and the nature of its business and the allegations which show

diversity of citizenship between the parties. It admits that it was engaged in the construction of a high line through the corporate limits of the City, intended to carry 33,000 volts of electricity, but it denies that it was without right or authority so to do. It admits that as being constructed, the line runs along the side of the public school grounds but denies that it was very dangerous or unsightly. It also denies that the construction of the line would work irreparable injury or that it would constitute a nuisance.

Defendant contended in the trial court and it renews its contention here, that the plaintiff was estopped to deny that it had a right to construct and maintain the transmission line as it was proposing to do. The material facts upon which this contention is based are somewhat unusual. For some time prior to 1939 defendant had been furnishing electric power to the City of Rector. Its transmission line entered the City from the east over sparsely settled streets. In that year the inhabitants of the City formed a municipal improvement district, designed to supply electric service for the City, and application was made to the Public Works Administration for construction funds. Defendant in the instant case actively opposed this movement by litigation and this litigation was compromised by the passage of an ordinance known in the record as Ordinance 190, adopted January 21, 1935. The ordinance recited that in consideration of $4,500 paid by the defendant to reimburse the City for its expense in connection with the project which it had undertaken and the litigation resulting therefrom, the Arkansas-Missouri Power Corporation would have the right to operate in the City of Rector for a period of ten years. As the ordinance did not meet with the approval of many of the residents it was, pursuant to the provisions of the state constitution of Arkansas, referred to the people and by popular vote was rejected. Defendant, however, continued to furnish power and light to the City of Rector and its residents just the same as if the ordinance had been in full force and effect, and in prior litigation in which it sought to enjoin the City from constructing its own plant it alleged in its

complaint that it "has been engaged in the distribution and sale of electric power and energy to the public of said City for compensation as authorized by franchise evidenced by ordinance of said City, No. 190."

On January 1, 1945, a few days before Ordinance 190 by its terms expired, the City entered into a contract with defendant to furnish electricity for the lighting of the streets. This contract by its terms provided that when accepted it would supersede any and all existing contracts. Under the provisions of Ordinance 190 there was paid to the City the sum of $4,500 on condition that, "The grantor City of Rector, Arkansas, hereby expressly reserves the right upon repayment to grantee, Arkansas-Missouri Power Company, its successors or assigns, said sum of $4,500.00 * * * and after notice in writing for thirty days of its intention to terminate, shall at its option repeal said ordinance." This money had not been repaid at the time of the trial of this action nor had the defendant sought repayment. Defendant has continued to serve the City by furnishing electric power and energy although no franchise was specifically granted by the City to defendant after the rejection of Ordinance 190 by the voters of the City. Apparently defendant has continued to serve the City in accordance with the provisions of the rejected ordinance.

Referring to the high voltage transmission line in controversy here, the court found that, "While this line incidentally served the City and its residents, the primary purpose of the defendant in constructing the transmission line was to facilitate the furnishing of continuous service of power to a large territory, in two states, including many other cities, towns, villages and communities."

The court concluded as a matter of law that the City, by permitting defendant to continue to deliver power to the City and the public did not estop itself to deny that defendant had a franchise or to deny that Ordinance 190 constituted a contract. The court also concluded that the City had control of its streets and alleys and the right and power to control their use by the defendant and that the defendant was without authority to construct or maintain upon the streets of the City said transmission line.

After the court had handed down its opinion indicating that it determined the issues in favor of the plaintiff, defendant interposed a motion for rehearing and for leave to introduce additional evidence, which it asked to have treated as a motion for rehearing on the ground of newly discovered evidence. It attached to its motion papers certified copy of a twenty-five year franchise granted to J. N. Petrie on November 9, 1911 and mesne conveyances from Petrie to defendant. This motion the court overruled.

■ Whatever rights defendant may have acquired, either by accepting the terms of Ordinance 190 or by estoppel, these rights certainly did not exceed those granted by Ordinance 190. That ordinance in terms authorized the erection and maintenance for a term of ten years of distribution lines in the City of Rector. It also granted the right to transmit electric current from its plants located elsewhere and to furnish lights and power to the inhabitants of the City of Rector. It also provided that poles of said "distribution system shall be placed along the streets, etc." Grants of power to a utility by a municipality are strictly construed against the utility in favor of the municipality. Citizens Pipe Line Co. v. Twin City Pipe Line Co., 178 Ark. 309, 10 S.W.2d 493; City of El Dorado v. Coats, 175 Ark. 289, 299 S.W. 355; City of Paragould v. Arkansas Utilities Co., 8 Cir., 70 F.2d 530. In Citizens Pipe Line Co. v. Twin City Pipe Line Co., supra, the Supreme Court of Arkansas, among other things, said that [178 Ark. 309, 10 S.W.2d 495], "grants from the sovereign power are to be construed strictly against the grantee and in favor of the city or government making the grant." In that case it was held that the utility was limited and restricted to the construction and operation of its pipe line and to the transportation of gas for the consumption and use of a particular plant and that only. And it was held that appellant company "had no right to cross the streets and alleys of the city with its pipe line or to furnish gas to other persons than the Harding glass plant, nor

to it, without the permission of the city first obtained authorizing it to do so."

The construction of this transmission line is confessedly in addition to the plant and system as it had theretofore been constructed and maintained. This seems to have been recognized by the defendant and it was only as a last resort that it proceeded to construct the line within the city limits. As observed by the trial court, "Defendant in effect admits that the proper place for this high power line is in the country districts, away from the more densely populated areas, but pleads its inability to condemn a right-of-way through private property." There was testimony by defendant's chief engineer that two other surveys had been made and that defendant tried to purchase the right to locate the line between two privately owned lots and that this location would have kept the line out of the western side of the city. The owner of the lots, however, refused to grant the right-of-way. He also testified that a second survey located the route of the line west of the city until it reached a point of the new substation site. But here again a landowner refused to let defendant extend its line across his land. The witness then testified that, "There was only one other thing to do and that was to go down the streets where the defendant already had existing lines." This witness further testified that, "The defendant has not had any high voltage lines in Rector north and west of the railroad"; that it never informed the officers of the City that it was building a 33,000 volt line around the school building; that "When the City of Rector objected to the building of the transmission line the defendant got busy and completed it."

Pope's Digest Laws of Arkansas, Sec. 2078(a) (b) and (f), provides that every city and town shall have jurisdiction by ordinance or resolution to determine on what terms and conditions a public utility may be permitted "to occupy the streets, highways or other public places within the municipality, and such ordinance or resolution shall be deemed prima facie reasonable." The statute also vests in the City power "to require of any public utility such addi-tions and extensions to its physical plant within said municipality as shall be reasonable and necessary in the interest of the public, and to designate the location and nature of all such additions and extensions, the time within which they must be completed, and all conditions under which they must be constructed."

The construction of this transmission line is an additional burden to adjacent property. Southwestern Bell Telephone Co. v. Biddle, 186 Ark. 294, 54 S.W. 2d 57, 687; Cathey v. Arkansas Power & Light Co., 193 Ark. 92, 97 S.W.2d 624. Not only does the construction of this line constitute an additional burden but it is a dangerous instrumentality. City of Fort Smith v. Hunt, 72 Ark. 556, 82 S.W. 163, 66 L.R.A. 238. The maintenance of overhead electric wires designed to carry a strong and powerful current is so extremely dangerous that courts take judicial notice of such danger. The danger arises from the fact that should persons come in contact with such wires they are certain to be seriously injured, if not killed, and because of the fact that such wires may originate fires, or may obstruct the extinguishment of fires.

Section 9702, Pope's Digest of the Laws of Arkansas, makes it the duty of the city to protect its inhabitants against encroachments on the streets. That section provides: "The city council shall have the care, supervision and control of all the highways bridges, streets, alleys, public squares and commons within the city; and shall cause the same to be kept open and in repair, and free from nuisance." See Lincoln v. McGehee Hotel Co., 181 Ark. 1117, 29 S.W.2d 668.

It appears that the line as constructed extends three blocks along the school grounds in the City and is 34 feet from the school building. The poles, carrying three wires, are from 45 to 50 feet in height and are set in the ground at a depth of from 7 to 9 feet. There was also testimony that the City owns its own water distribution system and that the water commission has plans drawn for the extension of the water and sewer mains and has secured permit from the highway department to go under

the highway at one point; that defendant has put its poles in some places within six inches of the water lines and the vibration from the poles will cause the water lines to break; that one of the poles is directly in the way of the proposed water main; that in some places the lines extend over buildings and in other places they are very close to buildings; that in case of a fire in a building over which these wires are strung the chief of the fire department testified that he "would not attempt to fight the fire and would not ask one of his men to do so; the wires are too low." An electrical engineer testified for the plaintiff that "he observed the route of the line as it was being built. It has been his experience and observation as an engineer that 33,000 volt lines, wherever possible, should not be located in towns. * * * As an electrical engineer, he says the effect of this high voltage line in the city would interfere with radio reception within an area of 150 to 200 feet. This would be a decided disadvantage to home-owners along the streets on which the line is located. * * * There are some poles located within 16 feet of houses and there are wires over other buildings, and wires in trees—places where the wires are actually touching the trees. At the time he made the inspection, the line had been energized and the trees were wet and the current was arcing. * * * The location of the line opposite the school house presents a definite hazard to children, greater than if the line were not located there at all. The location of poles near a water main will create a definite chance of electrolysis acting on the water pipes causing their deterioration. Then again, if the pipes are lying against the poles, there would be vibration which might break the pipes."

█ It can scarcely be maintained that the right to construct and maintain this very dangerous instrumentality was acquired either by Ordinance 190, purporting to grant the defendant the right to construct and maintain an electrical system within the City of Rector, or by estoppel. Indeed, it may be observed that if this Ordinance 190 was a contract, it had been fully performed by both parties thereto prior to the trial of this action.

Ordinance 198 of the City provides that it shall be unlawful for any person to make any excavation in any streets or alleys for any purpose, without first making an application and procuring a permit in writing from the mayor. This ordinance was not complied with by defendant, which requirement would have been necessary even had the structure been within the grant of the ordinance under which defendant claims to have maintained its electrical distribution system within the City.

█ Plaintiff here does not seek to enjoin the defendant from maintaining or operating its electric light system. It only seeks to enjoin defendant from constructing and maintaining this transmission line, in close proximity to schools and residences, and the judgment appealed from in no way interferes with the defendant in maintaining and operating its present distribution system in the City. The construction and maintenance of this transmission line is attended by such additional hazards to the City and its inhabitants as to require permission of the authorities of the City granted in the manner provided by law.

█ It remains to consider the action of the court in denying defendant's motion for rehearing on the ground of newly discovered evidence. The franchise granted to J. N. Petrie by its terms expired November 9, 1936. It purported to grant a franchise to operate electrical facilities in the City of Rector. It was in the form of an ordinance and presumably a matter of public record from the time of its approval. It granted authority to maintain a 50 kilowatt plant, but it did not purport to authorize the use of any of the streets for the construction and maintenance of a 33,000 volt transmission line to transmit power to Corning, Arkansas, to Portageville, Missouri, and other distant places. Such a motion is addressed to the judicial discretion of the court. In speaking of the requisites of a showing in support of a motion for new trial on the ground of newly discovered evidence, this court said in Johnson v. United States, 8 Cir., 32 F.2d 127, 130: "There must ordinarily be present and concur five verities, to wit: (a) The evidence must be in fact, newly discovered, i. e., discovered since the trial; (b) facts

must be alleged from which the court may infer diligence on the part of the movant; (c) the evidence relied on, must not be merely cumulative or impeaching; (d) it must be material to the issues involved; and (e) it must be such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal." See, also: Kithcart v. Metropolitan Life Ins. Co., 8 Cir., 119 F.2d 497; Marshall's U. S. Auto Supply v. Cashman, 10 Cir., 111 F.2d 140.

There was no abuse of discretion in denying defendant's motion. We are of the view that the record discloses no prejudicial error and the judgment appealed from is therefore affirmed.