McKee v. American Trust Company.

Opinion delivered December 1, 1924.

1. STATUTES—ENACTING CLAUSE.—Where an act contains the enacting clause prescribed by Const. 1874, art. 5, § 19, it is not necessary that the separate sections of the act should likewise contain such enacting clause.

2. STATUTES—AMENDMENT OF ACT BY REFERENCE TO TITLE.—Acts 1923, No. 627, § 6, amending Acts 1913, No. 113, relative to banks, by adding an additional complete section thereto, is not void as amending the latter act by reference to its title.

3. BANKS AND BANKING—DEPRIVATION OF PROPERTY WITHOUT DUE PROCESS.—Acts 1923, No. 627, § 6, which prohibits unauthorized corporations from doing business under the name of a "trust company," is not void, as a deprivation of property without due process, within Const. 1874, art. 2, § 8, or of the Fourteenth Amendment to the Constitution of the United States, in view of art. 12, § 6, authorizing the General Assembly to alter or repeal the general laws under which corporations may be organized.

4. CONSTITUTIONAL LAW—EX POST FACTO LAW.—Acts 1923, No. 627, § 6, which prohibits unauthorized corporations from using the words "trust company" as part of· their names, is not an *ex post facto* law, as it has no retroactive effect.

5. JURY—INJUNCTION SUIT.—In a suit to restrain an unauthorized corporation from using the words "trust company" as part of its name, in violation of Acts 1923, No. 627, § 6, the defendant is not entitled to a trial by jury.

6. BANKS AND BANKING—AUTHORITY OF BANK COMMISSIONER.—Under Acts 1923, No. 627, § 6, the Bank Commissioner is expresly authorized to bring suits to restrain corporations from doing business under a name prohibited by that act.

Appeal from Union Chancery Court, First Division; *J. Y. Stevens*, Chancellor; reversed.

*John M. Rose*, for appellant.

1. The use of the words "trust company" by appellees is a clear violation of the statute, § 6, art. 627, Acts 1923. No other construction can be placed on the clear and explicit language of the statute.

2. Before there can be a violation of the due process clause of the Constitution, there must be some "property" sought to be taken. Appellee has no property right in a trade name which is in fact a misrepresenta-

tion to the public. R. C. L., § 14, "Trade Marks, Trade Names," etc. In determining in this case whether there has been a violation of art. 2, § 8, Constitution, it must be considered in connection with art. 12, § 6, from which it appears that the due process clause does not apply in the case of corporations, unless injustice is done to the corporators. As to what constitutes an injustice, see 130 Ark. 128; 54 Ark. 101; 58 Ark. 407; 64 Ark. 83; 69 Ark. 521; 87 Ark. 587; 94 Ark. 27; 148 Ark. 504. It was within the rights of the Legislature to enact this bill, as being within the police powers of the State. R. C. L., § 182, 190, 192, 193, 194; 123 U. S. 623; 31 U. S. (L. ed.) 205; 85 Ark. 464; 6 R. C. L. 208-210; *Id.* 219; *Id.* 222.

3. The act is not an *ex post facto* law. The acts prohibited by the statute are such only as may be committed after its passage. The objection that it is *ex post facto* is particularly inapplicable in this case, since it is an injunction suit, and not in any sense a criminal prosecution. 23 Ark. 587; 1 Ark. 21.

4. The act 627 of 1923 is not within the inhibition of the Constitution, art. 5, § 23, with respect to amendment by reference only, either as to § 1700 of Crawford & Moses' Digest, relating to the formation of corporations, or as to the general banking act of 1913. 29 Ark. 252; 31 Ark. 236; 49 Ark. 131; 52 Ark. 290; 120 Ark. 165; 52 Ark. 326; 64 Ark. 83; 133 Ark. 380; 103 Ark. 298; 133 Ark. 157.

5. This case is an injunction proceeding, purely equitable, and the remedy prescribed by the statute. The right of trial by jury therefore does not exist. Art. 2, § 7, Constitution; 32 Ark. 553.

6. That the State Bank Commissioner, and not the Attorney General, is the proper party to maintain this action is clearly shown by the language of the act 627 of 1923, § 6.

SMITH, J. This suit was brought by the State Bank Commissioner against the American Trust Company, its officers and stockholders, to enjoin them from further violating § 6 of act 627 of the Acts of the 1923 General

Assembly (General Acts 1923, page 515). Act 627 is an act entitled ''An act to amend act 113 of the Acts of the General Assembly of 1913, entitled 'An act for the regulation and control of banks, trust companies and savings banks' as amended.''

The act is a very comprehensive one of twenty sections, and amends the State banking laws in many important particulars, especially act 113 of the General Assembly of 1913.

After amending act 113 of the Acts of 1913 in several particulars, § 6 of act 627 provides that act 113 ''be further amended by adding thereto an additional section reading as follows:

''All persons, firms, associations and corporations, except such as discharge the burden of proving their authority under the laws of another State or of the United States, and except those organized under the provisions of act 632 of the Acts of the General Assembly of 1921, or except such as are subject to the supervision of and have authority from the Bank Commissioner to engage in the business, or a substantial part thereof, of a bank, trust company, savings bank, *.* *, are prohibited from using in this State, as a portion of or in connection with their place of business, their name or title, or in connection with their office or other place of business, or in reference to themselves in their stationery or advertising, any of the words, or phrases, along or in combination with any other word or phrase, of 'bank,' 'banks,' 'banker,' 'bankers,' 'banking,' 'Federal reserve,' 'trust company,' 'trust,' * * *, or any other word or phrase which tends to induce the belief that the party using it is authorized to engage in the business of a bank, trust company, savings bank, * * *; and all person, firms, associations and corporations, under whatever name or title, and in whatsoever form, except mutual or cooperative banks * * * and other corporations organized under the provisions of act 632 of the Acts of the General Assembly of 1921, with the other exceptions as aforesaid, are prohibited from doing or soliciting business in this State,

substantially in the manner, or so as to induce the belief that the business is that, in whole or part, of a bank, savings bank, trust company, * * * either by the sale of contract, or of shares of its capital stock, upon partial or installment payments thereof, or by the receipt of money, savings, dues or other deposits, or by the issuance of certificates of deposit or certificates of deposit or certificates of investment of money, savings or dues * * * ."

It is further provided in § 6 that a violation of the provisions of that section shall constitute a misdemeanor, and be punishable by a fine of $25 for each day "during which it is committed or repeated." And that section further authorizes and directs the Bank Commissioner "to institute and prosecute in his own name, as such, in any court of competent jurisdiction, in civil suit in the nature of quo warranto, or for an injunction, or for any other appropriate remedy, in order that thereby the violation of any provision of this or said other acts, or *ultra vires* action, or the usurpation or threatened usurpation or misuse of any of the powers conferred by this or said other acts upon banks, trust companies, savings banks, or building and loan associations, may thereafter be prevented."

The complaint alleged that the defendant, American Trust Company, was violating this act, in that it was doing business under a name which implied that it was a trust company, when, in fact, it was not, and there was a prayer that the defendant be enjoined from further using the words "trust company" in connection with its business.

A demurrer to the complaint was filed, and overruled, whereupon an answer was filed setting up numerous defenses.

Among other defenses set up was that the act which the Bank Commissioner sought to enforce was void for the following reasons:

(1). The act was not read upon three separate days in each house; nor were the rules suspended by a two-

thirds vote of the members of each house, as required by § 22 of article 5 of the Constitution.

(2). The ayes and nays on the final passage of the bill were not recorded, as required by § 22 of article 5 of the Constitution.

(3). The act did not have the necessary enacting clause, as required by § 19 of article 5 of the Constitution.

An examination of the journals of the Senate and House of the 1923 General Assembly shows that the first and second objections to the act are not well taken.

Section 19 of article 5 of the Constitution provides that "the style of the laws of the State of Arkansas shall be: 'Be it enacted by the General Assembly of the State of Arkansas.'" An examination of act 627 shows that it contains this enacting clause. The separate sections of that act do not contain this clause; but the Constitution prescribes no such requirement.

Another objection to § 6, set up in the answer, is that it is, in fact, an amendment of a statute by reference to its title only. This objection is not tenable, as § 6 does not purport to amend act 113 by reference to its title, but amends this act, as amended, by adding a new section to it, and this additional section is a complete enactment in itself.

Other defenses set up in the answer are:

(a). That there has been no violation of the statute.

(b). That to require defendant to discontinue the use of the words "trust company" in the corporate name would deprive it of its property without due process of law.

(c). The act is void as an *ex post facto* law.

(d). Defendant is deprived of its right of trial by jury, in violation of the Constitution.

(e). The Bank Commissioner has no authority to maintain this suit.

In support of the allegations of the answer the following testimony was offered: Defendant is a domestic corporation, having its principal place of business at El Dorado; was duly organized under the laws of this

State on August 16, 1922, under the name of the American Trust Company, and the words "Trust Company," are a part of the corporate name under which it has, since its organization, conducted its growing business. The defendant company commenced operations with an investment of $28,000, and its business has been enormously successful, and the president of the company estimated the value of all its assets at several million dollars. It has an enormous correspondence, which it has conducted under its corporate name, by which it has become known to these correspondents, to whom it has sent many thousands of letters and circulars, and has stationery and literature bearing its corporate name, which cost several thousands of dollars. Much of this literature was propaganda designed to sell stock in a concern known as "Money-Back Oil Company," for which defendant was acting as agent and trustee. There were follow-up letters having the letterhead "American Trust Company, Incorporated," intended to be sent to persons on the mailing lists who had not replied to the first letters. This literature insured the bringing in of two "gushers," or to refund one-half the money paid for stock, and promises to return all money so paid if there was a failure to bring in one gusher, and there are representations calculated to arouse in the prospective investor the hope of "a clean profit of 120 to 1, or better." Upon reading this literature, one marvels at the generosity which would assure such prospects of profit upon terms so free from risk of loss, yet, according to the testimony of the president of the defendant company, its operations have been so successful in acquiring oil leases that it has fulfilled all representations made, and is prepared to continue to do so.

Defendant admits it is not authorized by its charter to do business as a bank or trust company, but denies that it has ever made any representation that it was so authorized, or was, in fact, engaged as such. Its business is that of buying and selling oil leases and developing oil fields.

There was a general finding in favor of the defendant, and the complaint was dismissed, from which decree is this appeal.

Appellee insists that it has become known to its correspondents by its present corporate name, and that it has valuable stationery and literature so stamped, and it insists that it would be deprived of valuable property rights if it were deprived of the right to continue to use its present corporate name.

Appellee further insists that the decree of the court below was correct, as being in accordance with § 8 of article 2 of the Constitution, which provides that "no person shall be deprived of life, liberty or property, without due process of law."

This provision of the Constitution must be read, however, in connection with § 8 of article 12 of the Constitution, which reads as follows: "Corporations may be formed under general laws, which laws may, from time to time, be altered or repealed. The General Assembly shall have the power to alter, revoke or annul any charter of incorporation now existing and revocable at the adoption of this Constitution, or any that may hereafter be created, whenever, in their opinion, it may be injurious to the citizens of this State, in such manner, however, that no injustice shall be done to the corporators."

This provision of the Constitution has been frequently construed by this court, and a late case interpreting it is that of *Davis* v. *Moore*, 130 Ark. 128, in which we quoted from Judge BATTLE's opinion in the case of *Leep* v. *Railway Co.*, 58 Ark. 407, as follows: "Natural persons do not derive the right to contract from the Legislature. Corporations do. They possess only those powers or properties which the charters of their creation confer upon them, either expressly or as incidental to their existence; and these may be modified or diminished by amendment, or extinguished by the repeal of the charters."

In the case of *Woodson* v. *State*, 69 Ark. 521, Mr. Justice RIDDICK, speaking for the court, said: "The citi-

zen does not derive his right to contract from the Legislature. The corporation does, and it possesses only such powers as may be conferred upon it by the legislative will, and these, under our Constitution, are liable to be altered, revoked or annulled by the power that granted them. Article 12, § 6, Const. of Ark. The plain purpose of this constitutional reservation was to keep corporations under legislative control. The only limitation on this power of the Legislature contained in our Constitution is that the alteration, revocation or annulment of the corporate powers must be made 'in such manner that no injustice shall be done to the corporators.' "

In the case of *Ozan Lbr. Co.* v. *Biddie,* 87 Ark. 587, Mr. Justice Battle, again speaking for the court, said: "The reserved power to amend a charter, in the absence of an express limitation, must be exercised upon terms that are just and reasonable. In *Shields* v. *Ohio,* 95 U. S. 319, 324, Mr. Justice Swayne, in delivering the opinion of the court, says: "It is urged that the franchise here in question was property held by a vested right, and that its sanctity, as such, could not be thus invaded. The answer is, *consensus facit jus.* It was according to the agreement of the parties. The company took the franchise subject expressly to the power of alteration or repeal by the General Assembly. There is therefore no ground for just complaint against the State. * * * The power of alteration and amendment is not without limit. The alterations must be reasonable; they must be made in good faith, and be consistent with the scope and object of the act of incorporation. Sheer oppression and wrong cannot be inflicted under the guise of amendment or alteration.' " After reviewing other authorities to the same effect, Judge Battle continued: "It is obvious that this power to amend charters of corporations is in force under the Constitution of this State with the same limitation. It was virtually so held in *Leep* v. *Railway Co.,* 58 Ark. 435. In that case, after a review of authorities, it is said: 'It is obvious that the Legislature cannot, under the power to amend, take from corporations the

right to contract; for it is essential to their existence. It can regulate it when the interest of the public demands it, but not to such an extent as to render it ineffectual or substantially impair the object of incorporation.' *St. L. I. M. & S. R. Co. v. Paul,* 173 U. S. 404; *Union Sawmill Co. v. Felsenthal,* 85 Ark. 346.''

There is no attempt here to deprive appellee company of its right to contract; nor is there any attempt to confiscate the property which it has accumulated under its present corporate name. Its ownership of this property, consisting principally of oil leases, will not be impaired by requiring it to change its present corporate name. The State, in the exercise of its police power, has, through its General Assembly, directed that no one shall assume to do business under a name which carries the implication that it is a bank or a trust company, when it is not such in fact. It was thought wise to afford the public protection from possible imposition by such a course of business, and we think it is no injustice to a corporation, within the meaning of § 6 of article 12 of the Constitution, quoted above, to prohibit a corporation from doing business under a corporate name which might be misleading to the investing public as to its corporate character.

It is also insisted in the answer that the act of the General Assembly in question is violative of the due process of law clause of the Federal Constitution, which provides that no State shall deprive any person of life, liberty, or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws. Section 1 of Amendment 14, Federal Constitution.

Of this defense but little need be said. In 6 R. C. L., title ''Constitutional Law,'' beginning with § 198, the scope and objects of enactments under the State's police power are dealt with, and this section and those following cite annotated cases which collect an almost limitless number of cases on the subject. It will suffice to quote what Mr. Justice Harlan said, in speaking for the

Supreme Court of the United States, in the case of *Mugler* v. *Kansas*, 123 U. S. 623, 31 L. ed. 205. This was the case in which the validity of the prohibition law of the State of Kansas was involved, and, in upholding that statute, Justice HARLAN said: "Under our system that power is lodged with the legislative branch of the government. It belongs to that department to exert what are known as the police powers of the State, and to determine, primarily, what measures are appropriate or needful for the protection of the public morals, the public health, or the public safety."

As to the contention that act 627 is void as an *ex post facto* law, it may be said that the act is not subject to this objection. It does not make any action taken before its passage unlawful.

The other defenses raised in the answer require but little discussion.

Appellee was not entitled to a trial by jury, as this was not a suit to enforce the criminal features of the act, but was one to enjoin its continued violation. *Hickey* v. *State,* 123 Ark. 180; *Marvel* v. *State,* 127 Ark. 595; *Adams* v. *State,* 153 Ark. 202.

The Bank Commissioner has authority to maintain this suit. The act imposed upon him the duty of enforcing its provisions, and expressly authorizes him to bring an injunction suit when necessary.

Appellee's violation of the act is obvious. Its present corporate name indicates that it is a trust company, possessing the powers conferred by law on such corporations, and its answer admits that its charter confers no such power.

We conclude therefore that the court below erred in dismissing the Bank Commissioner's complaint as being without equity, and that decree is reversed, and the cause will be remanded with directions to enter a decree in accordance with this opinion.