NOBLE *v.* DAVIS.

4-6663                                        161 S. W. 2d 189

Opinion delivered April 27, 1942.

*Jack Holt,* Attorney General, and *Clyde E. Pettit,* Assistant Attorney General, for appellant.

*John L. Carter,* for appellee.

McHANEY, J. Appellee is a citizen, resident and taxpayer of Little Rock, Arkansas. He is a barber and operates a barber shop at 2202 South Maple street, Little Rock, charging 25 cents for a haircut and 20 cents for a shave. Appellants are members of the State Board of Barber Examiners, by authority of act No. 313 of 1937.

Appellee brought this action against appellants to enjoin them from establishing and promulgating a minimum price to be charged by barbers in Little Rock at 40 cents for a haircut and 20 cents for a shave, which he alleged they were about to do, under the provisions of act No. 432 of 1941, in violation of the Constitutions of this state and of the United States. He further alleged that said act 432 is unconstitutional and void, especially § 3 thereof. A temporary restraining order was granted. Appellants demurred on the grounds of lack of jurisdiction of the court and failure of the complaint to state a cause of action. The demurrer was overruled. Appellants declined to plead further and a decree was entered making the temporary order permanent. This appeal followed.

The business or profession of the barber is an ancient and honorable one. The New International Encyclopaedia says: "The office is of great antiquity and is referred to by the prophet Ezekiel: 'And thou, son of man, take thee a barber's razor, and cause it to pass upon thine head and upon thy beard.' From ancient monuments and papyri we know that the Egyptians shaved both the beard and the head. In all eastern countries including China, the shaving of the whole or part of the head continues to be performed by barbers. The barber shops of Athens and Rome were great meeting places for idlers and gossips, and in provincial towns they continue to serve such purpose up to the present day." Barbers once practiced elementary medicine and surgery and were known as barber surgeons and the red band around the barber pole with a basin at the

bottom still are insignia of this ancient practice, the red band representing the bandage used to stop the bleeding incident to the operation and the basin to catch the blood. The barber is celebrated in song and story, and at least two operas were built about him—the Barber of Bagdad and the Barber of Seville—the latter being perhaps the most tuneful opera ever composed, and the part of Figaro, the barber in it, has been sung by many of the great singers of modern times.

Act 432 of 1941 became a law without the Governor's signature. No significance is to be attached to this fact, except he too may have thought the Legislature had exceeded its powers. After declaring that it is found to be a fact that the public health and safety cannot be protected under the present law, referring to act 313 of 1937, and that the present schedule of prices for barber services is the result of unfair and uneconomic trading practices, it is said in § 1, that: "The purpose of this act is the protection of the public safety, health, welfare and general prosperity, and the provisions herein contained for the establishment of minimum prices for barber services, minimum commissions or wages of barbers, and opening and closing hours for barber shops are hereby expressly declared, as a matter of legislative determination, to be the only means by which in this instance the public safety, health, welfare and general prosperity can be adequately and effectively protected."

Section 3 provides that the Board of Barber Examiners shall be empowered to establish minimum price schedules for barber work, minimum commissions to be paid to barbers for their services, and opening and closing hours for barber shops in cities of the first or second class or incorporated towns in the manner and with the limitations therein provided. We do not set out these provisions as they are too long to copy and we do not deem them pertinent here. Power is conferred on the Board to adopt and enforce all rules and orders necessary to carry out the provisions of the act. Section 5. By § 10, a violation of the act or any rule, subpoena or order of the Board is made a misdemeanor punishable by fine or imprisonment or both. Broad powers are con-

ferred on the Board in the granting, suspension and revocation of licenses to barbers in § 11.

What we said at the beginning of this opinion about the business or profession of the barber was said for the purpose of emphasizing the fact that it is one of common right, subject to proper regulation under the police power, and, as we said in *State, ex rel. Attorney General* v. *Gus Blass Co.*, 193 Ark. 1159, 105 S. W. 2d 853, "Statutes limiting and regulating occupations which before were of common right can find no excuse except as they relate to the public and are for its benefit." Act 313 of 1937, digested as § 12069, *et seq.* of Pope's Digest, being an act to regulate the practice of barbering, etc., was sustained as a valid exercise of legislative powers in *Beaty* v. *Humphrey, State Auditor*, 195 Ark. 1008, 115 S. W. 2d 559. Act 198 of 1939, similar in all respects to the act now under consideration, a price fixing act, was attacked in the lower court on the grounds that it never became a law, because improperly passed, and, if not so, that it deprived the plaintiff of his civil liberties and property in violation of his constitutional rights. The attack was sustained in the lower court on both grounds. On appeal it was conceded that the act was improperly enacted and never became a law, and this court sustained the lower court on this ground, not passing on the other: *McDougal* v. *Davis*, 201 Ark. 1185, 143 S. W. 2d 571.

One of the contentions made in the case of *Beaty* v. *Humphrey, Auditor*, was that said act 313 constituted an unnecessary duplication of state agencies having power to prescribe sanitary regulations, in that the State Board of Health already prescribed such regulations. This contention is mentioned to emphasize the fact there is full, ample and plenary power, already vested in appellants and in the State Board of Health, to safeguard the public health by prescribing sanitary and other regulations of barber shops.

That portion of § 1 of said act 432, above quoted, where the Legislature declared that the purpose of the act is the protection of the public health, safety, etc., is the declaration of a non-existent fact. The fact that the

Legislature so declared the purpose of the act does not make it so, if, in fact, the declared purpose has no substantial connection with the real purpose of the act. The real and only purposes of the act were to confer power on appellants to establish (1) minimum price schedules for barbers; (2) minimum commissions to be paid to barbers for their services; and (3) opening and closing hours for barber shops. Now just what connection these three purposes have with the "protection of the public safety, health, welfare and general prosperity," or with either of them, is difficult to perceive. How can the price a barber charges for a haircut or shave, or the commission the owner pays the barbers, or the hour the shop opens or closes affect the public safety, health, welfare or prosperity? Such connection is visionary and not real. In line with what we have just said, Am. Jur., vol. 11, p. 1077, it is said: "The mere assertion by the Legislature that a statute relates to the public health, safety, or welfare does not in itself bring that statute within the police power of a state, for there must always be an obvious and real connection between the actual provisions of the police regulations and its avowed purpose and the regulation adopted must be reasonably adapted to accomplish the end sought to be attained. A statute or ordinance which has no real, substantial, or rational relation to the public safety, health, moral, or general welfare is a palpable invasion of rights secured by fundamental law and cannot be sustained as a legitimate exercise of the police power. One application of the familiar rule that the validity of an act is to be determined by its practical operation and effect, and not by its title or declared purpose, is that a constitutional right cannot be abridged by legislation under the guise of police regulations. The exercise of the power must have a substantial basis and cannot be made a mere pretext for legislation that does not fall within it. The Legislature has no power, under the guise of police regulations, arbitrarily to invade the personal rights and liberty of the individual citizen, to interfere with private business or impose unusual and unnecessary restrictions upon lawful occupations, or to invade property rights."

The state of Louisiana has an act similar to our act now under consideration. In *Board of Barber Examiners* v. *Parker,* 190 La. 214, 182 So. 485, the court first held the act invalid by a four-to-three decision. On rehearing, by a five-to-two decision, the act was sustained. Chief Justice O'Niell filed a dissenting opinion, from which Judge McKinney of the Supreme Court of Tennessee quoted with approval in *State* v. *Greeson,* 174 Tenn. 178, 124 S. W. 2d 253, as follows: ''The only question in these cases is whether a statute authorizing a public board to fix the minimum fees that a barber may charge for his services really tends to protect the public health. It does not dispute that the barber's trade is one which may endanger the public health, and which is therefore subject to regulation by the Legislature. But I do not see how an act of the Legislature prescribing the minimum fees— or delegating to a public board the authority to prescribe the minimum fees—that a barber may charge for his services can protect, or have a tendency to protect, the public health. The only appropriate way in which the Legislature can protect the public health or promote the public welfare, in that respect, is to establish sanitary requirements and regulations, to maintain cleanliness in the barber shops, and to guard against unhealthy barbers, to prescribe qualifications and standards of efficiency, and to enforce them by means of examinations, or by requiring terms of apprenticeship. If a barber complies with all of the requirements of efficiency, and all of the sanitary regulations, as laid down by the Board of Health or by the Board of Barber Examiners, it cannot possibly endanger the public health or the public welfare.''

It was there (Tennessee case) further said: ''This class of legislation, that is, fixing prices, is new and likely resulted from the decision of the Supreme Court of the United States in *Nebbia* v. *New York,* 291 U. S. 502, 54 S. Ct. 505, 78 L. Ed. 940, 89 A. L. R. 1469, decided March 5, 1934, in which the court sustained a statute fixing the price of milk in New York. A dissenting opinion was filed in that case, concurred in by four members of the court. The various acts fixing

prices to be charged by barbers, to which our attention has been directed, were passed since the decision in the Nebbia case.'' The following are some of the cases where the courts have held similar legislation invalid, in addition to the Tennessee case: *Duncan* v. *City of Des Moines,* 222 Ia. 218, 268 N. W. 547; *State, ex rel. Fulton* v. *Ives,* 123 Fla. 401, 167 So. 394; *Mobile* v. *Rouse,* 233 Ala. 622, 173 So. 266, 111 A. L. R. 349; *Hollingsworth* v. *State Board of Barber Examiners,* 217 Ind. 373, 28 N. E. 2d 64. The decisions in all these cases are based on the fact that the statutes of those states are not regulatory, but are mere price fixing statutes, or a delegation of the power to fix prices to a board, which have no real or substantial relation to the public safety, health, welfare or prosperity, and are thus distinguishable from the Nebbia case. In the Tennessee case the further observation is made: ''If the act in question is valid, then the Legislature can directly, or through a board, fix the fees that physicians and dentists may charge for their services; the prices that hotels, restaurants and lunch counters may charge for food; the prices of meats, packing house and canning factory products; and so on *ad finitum* until the liberty of the individual and the right to contract is destroyed.'' We agree with the principles announced in this case and the other cases above cited as also others that might be cited.

Appellants rely on the case of *Nebbia* v. *New York, supra; West Coast Hotel Co.* v. *Parrish,* 300 U. S. 379, 57 S. Ct. 578, 81 L. Ed. 707, 108 A. L. R. 1330; *Board of Barber Examiners* v. *Parker, supra;* and a few other price fixing cases. The West Coast Hotel case overruled, by a five-to-four decision, the former case of *Adkins* v. *Children's Hospital,* 261 U. S. 525, 43 S. Ct. 394, 67 L. Ed. 785, 24 A. L. R. 1238. In the West Coast Hotel case it was held that a statute of the state of Washington, which authorized the fixing of reasonable minimum wages for women and minors in any industry or occupation in that state was not invalid as being in violation of the due process clause of the Federal Constitution. We cannot agree that said case is controlling here, nor can we agree with the reasoning in the Louisiana barber

price fixing case, or the other cases cited so holding, some of which are *State* v. *McMaster,* 204 Minn. 438, 283 N. W. 767; Ex parte *Herrin,* 67 Okla. Cr. 104, 93 Pac. 2d 21; *Arnold* v. *Board of Barbers,* 45 N. M. 57, 109 Pac. 2d 779.

We, therefore, conclude that said act 432 of 1941 is unconstitutional and void, as we think it is in violation of § 1 of the 14th Amendment to the Constitution of the United States providing: "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws"; but if not, then it is certainly in violation of §§ 2, 18, 19 and 29 of article II of the Constitution of this state.

The decree is accordingly affirmed.