Mrs. Doris McCastlain, Comm. *v.* R. & B. Tobacco Co.

5-4140                                    411 S. W. 2d 882

Opinion delivered March 6, 1967

*Lyle Williams, A. W. Nisbet, Hugh L. Brown* and *Catlett & Henderson,* for appellant.

*Knox Kinney* and *Neill Bohlinger,* for appellee.

Lyle Brown, Justice. This appeal by the State Revenue Commissioner comes from a successful attack by R. & B. Tobacco Company on the constitutionality of Regulation I, promulgated by the Commissioner of Revenues for the State of Arkansas. As a prerequisite to the granting of a cigarette wholesaler's permit, the regulation requires the appellant to produce letters of credit from three-fourths of the manufacturers of cigarettes having general distribution in Arkansas.

R. & B. Tobacco Company is a partnership engaged in the wholesale tobacco business in Forrest City. On or about September 25, 1964, R. & B. made application to the State Commissioner of Revenues for a permit to distribute cigarettes at wholesale in the State. Under authority of Ark. Stat. Ann. § 84-2302 (Repl. 1960), the Revenue Commissioner called for R. & B. to produce letters from all cigarette manufacturers having general distribution in Arkansas, containing the assurance that they would sell to R. & B. on open account.

Efforts to obtain these letters were unsuccessful and the permit was denied. R. & B. filed suit in the Pulaski Chancery Court against the Commissioner, successfully attacking the constitutionality of that portion of Ark. Stat. Ann. § 84-2302 which required letters from cigarette manufacturers as a prerequisite to the granting of a permit. However, the permit was denied because one of the partners had not been a resident of Arkansas for the required length of time. Neither the Revenue Commissioner nor R. & B. appealed from the rulings of the Chancellor.

On November 29, 1965, the Commissioner promulgated Regulation I, purporting to proceed under the authority of Act 416 of the Acts of 1941, as amended. Regulation I reads as follows:

"Regulation I. An applicant for a Cigarette Wholesaler Permit shall attach to the application letters from not less than three-fourths of the cigarette manufacturers who have general distribution of cigarettes in Arkansas that such manufacturers will ship on open account on approval of the application. This regulation promulgated under authority of and in compliance with Act 183 of 1953."

Within a few months thereafter, and upon completion of the requirement for residence, R. & B. resub-

mitted its application. The Commissioner declined to issue a permit for lack of compliance with Regulation I. R. & B. filed suit, challenging the constitutionality of Regulation I. From the finding of the chancellor that the regulation was unconstitutional comes this appeal by the Revenue Commissioner.

The first point advanced for reversal is that the sale of cigarettes at wholesale is a privilege, having been so declared by legislative enactment; that our court has recognized the selling of real estate, the operation of a coin-operated jukebox, the act of fortune telling, and the taking of photographs as privileges. Appellant theorizes that there is more reason for the regulation of the sale of cigarettes as a privilege than for the regulation of the enumerated ventures. The Commissioner supports the need for Regulation I on the basis that annually the State derives fourteen million dollars from the cigarette tax and this lucrative revenue requires careful control. Regulation I—so says the Commissioner—serves a two-fold protection for the State's revenues: first, it assures the State that the distributor is financially responsible; and, second, it gives the State a "source control" because the manufacturer furnishes the State a copy of all purchase orders, which in turn assures the State that it gets a proper return of its tax.

R. & B. counters that Regulation I will not necessarily accomplish the alleged purposes expressed by the Commissioner, and secondly, that the regulation in effect delegates to the cigarette manufacturers, some eight in number, the power to determine whether a distributor's permit will be issued. The latter argument is the basis for R. & B.'s contention that Regulation I constitutes an unlawful delegation of power.

Ark. Stat. Ann. § 84-2325 (Repl. 1960) empowers the Commissioner to make such rules and regulations "as he deems requisite and advisable" for the admin-

istration of the licensing Act. However, such regulations must be tested in light of their reasonableness. The fact that they facilitate, in some measure, the enforcement of a valid tax—that fact, standing alone—is not sufficient.

Will letters from the manufacturers to the Commissioner, stating that they will ship R. & B on open account, furnish the assurance that R. & B. is financially responsible? The distributor might well be financially responsible as of the dates of the letters; yet, as to *future* financial responsibility, the situation might well change. This could occur without the knowledge of the manufacturer, and, if the manufacturer had the knowledge, it is under no obligation to transmit such information to the Commissioner.

Witness E. E. McLees testified that Regulation I would give the State ''a source control absolutely.'' He justified this statement on the basis that the letter of assurance would cause a manufacturer to furnish the State a copy of all purchase orders by the distributor ''which would insure that the State gets the proper return of its tax.'' We find nothing in the record to establish this obligation on the part of the manufacturer. Furthermore, let us assume that R. & B. obtained the required letters from three-fourths of the manufacturers. How would this insure the State ''control absolutely'' over the balance of the manufacturers?

There is yet another reason, and probably more paramount, for holding Regulation I invalid. It makes possible the denial to a citizen of Arkansas, otherwise qualified, of the right to operate a lawful business in this State. This can be effectuated by a small group of out-of-state manufacturers, who—for reasons they are not required to reveal—do not desire to place a new distributor in competition with their established customers.

R. & B. has been engaged in the tobacco and notions business since 1964, with headquarters in Forrest City, merchandising their wares in several surrounding counties. Its annual sales approximate three hundred thousand dollars. It shows a net worth of $102,660.00. One of the partners owns substantial real estate. It has open accounts with major companies and discounts all bills. Credit has never been refused. Prior to this partnership being formed, one of the partners was a factory representative for two major tobacco companies, and also a district manager for a cigarette company. An investigation of the partnership by the Commissioner's office revealed nothing that would indicate the partners were anything other than business men of the highest caliber. Mr. McLees testified that the Commissioner did not question their integrity or their financial standing. The sole reason for the denial of the permit, according to Mr. McLees, was the failure of R. & B. to furnish the required letters.

We point up the foregoing facts to emphasize the danger of Regulation I. These partners had the finances, established business and credit connections, experience, and unquestioned integrity; yet they are denied the privilege of adding cigarettes to their lines, and solely because these out-of-state manufacturers choose, for reasons known only to them, to prevent it.

Finally, an examination of the record discloses a very peculiar situation. R. & B. purchases chewing tobacco from a subsidiary of Liggett & Meyers; it purchases tobacco, other than cigarettes, from U. S. Tobacco Company and Phillip Morris Company. These purchases are made on open account, all of which R. & B. keeps current. Yet, these major cigarette manufacturers choose not to sell R. & B. their cigarettes. The Commissioner of Revenues and R. & B. are powerless to determine the reason. By Regulation I, the Commissioner has surrendered all discretion in this respect, leaving the matter of R. & B.'s credit rating in the hands of these foreign corporations.

We hold Regulation I to be an unreasonable exercise of the rule-making power of the Commissioner of Revenues. It is in violation of Art. 2, § 2, of the Constitution of Arkansas, in that it imposes an unusual and unnecessary restriction on a lawful occupation. See *Noble v. Davis*, 204 Ark. 156, 161 S. W. 2d 189 (192).

Affirmed.