BRANCH *v.* POWERS.

4-7983                                      197 S. W. 2d 928

Opinion delivered December 2, 1946.

*Ed E. Ashbaugh,* for appellant.

*T. J. Gentry* and *Rose, Dobyns, Meek & House,* for appellee.

HOLT, J.   This appeal involves the use that may be made of a one story, two car garage, 18 x 30 ft. in size, located in the rear of appellant's residence, bordering the alley, on lot 1, block 6, Patrick Powers Addition to Little Rock, under a zoning ordinance enacted in February, 1937.

Appellant acquired the above lot in 1924 and built his home on it. It was then, and is now, a residential district. In 1932, after obtaining the necessary permit, he built a two car, one story, residence garage on the rear of the lot. This garage building was 18 x 30 ft., with sheet metal side walls and a concrete floor, and was built for a private garage. He rented this garage for the years 1933 and 1934 to be used as a public garage and the city was paid $50 each year for the necessary permit. Beginning with 1935, he discontinued the use of the building for a public garage and began storing certain automobile accessories in it, which accessories he was using in connection with two filling stations he was operating.

In November, 1936, he ceased operating the filling stations and began selling certain automobile accessories, an occupation that he has since followed. The merchandise which he sold consisted of articles for "tire and tube repairs, radiator stop-leak, radiator cleaner and cut-patches." Without making any structural changes in the garage building, he added a few shelves and stored his merchandise in it, on the shelves and on the concrete floor. The value of this merchandise averaged from $1,500 to $4,000 each week. About twice weekly, he loaded from $800 to $1,000 worth of this merchandise in a truck that he owned, drove to different parts of the state, and made sales to retail dealers. When he returned from these trips, he stored his truck in the garage. When he left home on the trips, he locked the garage and it remained locked until his return. No one was in this garage during the day and he made no sales from it. He had no employee and left no one in charge. He never assessed this merchandise for taxing purposes and paid no city taxes on it. He did not list his business in the telephone directory, just listed "O. T. Branch," and there was no sign on the property indicating the character of the business.

Appellant, in February, 1946, sought permission from the city to operate a public garage in this building, but was denied this privilege on the ground that to grant it would violate the provisions of the city ordinance, *supra*.

By appropriate proceedings, appellant sought the aid of the Pulaski Chancery Court to compel the city to issue a license to operate the garage business. Many property owners intervened and alleged that appellant had abandoned the use of this garage building, as a public garage, prior to the passage of the zoning ordinance in February, 1937; that after he built this building, they had purchased surrounding homes, and that to permit appellant to use this property for business purposes would depreciate the value of their homes and be in violation of the terms of the ordinance, etc.

The trial court found that the use of the garage proposed by appellant was not permissible under the zoning ordinance and dismissed his complaint for want of equity. This appeal followed.

As we view this record, the issue turns on a question primarily of fact. Appellant says: "This property is located in what is known under the city zoning ordinance No. 5420 as A or B Zone, a residential district, but this building at the time of the adoption of the city zoning ordinance in 1937 was being used in a non-conforming business and as such was exempt from the restrictions of the ordinance in so long as the non-conforming use was not discontinued or changed to one of a higher classification."

The ordinance divided the city into eleven zones, numbered from A to K, inclusive, Zone A being the most restricted and Zone K the least. Section 10 provides: "The lawful use of a building existing at the time of the passage of this ordinance may be continued, although such use does not conform with the provisions hereof, and such use may be extended throughout the building provided no structural alterations, except those required by law or ordinance are made therein. If no structural alterations are made, a non-conforming use of a building may be changed to another non-conforming use of the same or more restricted classification."

Appellant argues that he has been engaged in the wholesale business and using his garage as a wholesale

warehouse, a non-conforming use under the ordinance, since before its adoption in 1937, and is entitled, under the provision, *supra*, to change its use or reconvert to that of a public garage, another non-conforming use. The fallacy of this contention, as we view the facts, is that the preponderance of the evidence is not against the Chancellor's finding that the use appellant has made of this small garage since 1935 has not been such a non-conforming use as the ordinance contemplated.

The recent case of *City of Little Rock* v. *Williams*, 206 Ark. 861, 177 S. W. 2d 924, on which appellant strongly relies, is clearly, we think, distinguishable on the facts. In that case, the building in question was built strictly for business or commercial purposes and a part of it had been used for a period of thirty-five years, both for retail and wholesale purposes.

Here, the facts, detailed above, are quite different. Under a permit for the purpose, appellant built this two car, one story garage in 1932 for a private garage and not for business purposes. In 1933 and 1934, it was used for what would be a non-conforming use under the ordinance, but since 1935, as we have indicated, the use which appellant made of this building on the facts was not that of a wholesaler or storage warehouse within the contemplation of the ordinance.

To repeat briefly, appellant carried his merchandise in his truck and made on-the-spot sales and deliveries direct to the purchaser, after the fashion of a peddler or a hawker. He made no sales from his garage and kept it locked during his absence. He carried in his truck more than one-third of the value of his entire stock of goods on each trip and had no employee to help him.

When we note the other businesses which the City Council placed in the same classification as "storage warehouse" and "wholesale business," we think it clear that it was not intended that the business in which appellant was engaged should fall within, and be classified with, any of these non-conforming businesses. The complete list of these businesses are: "Bakeries, other than

those whose products are sold at retail on the premises, blacksmith or horse-shoeing shop, bottling works, building material storage yard, carting, express, hauling or storage yard, contractor's plant or storage yard, coal, coke or wood yard, cooperage works, dyeing and cleaning works (employing more than five (5) persons on the premises), ice plant or storage house of more than five (5) tons capacity, laundries (employing more than five (5) persons on the premises), livery stable or riding academy, lumber yards, machine shop, public garage, except as provided in section 18, milk distributing station other than a retail business conducted on the same premises, stone monumental works (employing more than five (5) persons), storage warehouse, wholesale business, and any use excluded from the Light Industrial Districts.''

It seems to us that a consideration and analysis of the nature and character of these different businesses must lead to the conclusion that the city's legislative body contemplated that before a business could measure up to that of ''wholesale business'' or ''storage warehouse,'' it must be operated on a scale similar to or comparable to that of the other businesses on the list. The facts here fall far short of any such showing by appellant.

Having reached the conclusion that appellant, having used the garage in question for a conforming use since 1935, for approximately two years before the ordinance, *supra,* was enacted, and for about nine years thereafter, we hold this constituted an abandonment of the use of the building for a non-conforming use, and that the trial court correctly denied to him the right at this late date to reconvert to the business of a public garage.

Accordingly, the decree is affirmed.