CITY OF WEST HELENA *v.* BOCKMAN.

4-9997                                           256 S. W. 2d 40

Opinion delivered March 2, 1953.

Rehearing denied April 13, 1953.

*James P. Baker, Jr.,* and *John L. Anderson,* for appellant.

*John C. Sheffield,* for appellee.

J. SEABORN HOLT, J. Dr. James Bockman, appellee, a practicing physician, has, since 1937, operated a Clinic in a structure within that part of the City of West Helena (population 7,000) designated, by a Zoning Ordinance, (No. 494 enacted April 17, 1951) as Residential Zone "A". The building housing his Clinic is one story, on a lot 66 ft. x 132 ft., and consists of six rooms—an X-Ray room, a laboratory, examining room, one bath room, two

waiting rooms (one for white and the other for Negro patients), and a porch, 21 ft. x 8 ft. Appellee's residence is in another part of the city.

Dr. Bockman made proper application, in accordance with provisions of the Zoning Ordinance, for a permit to expand and enlarge his present building beyond its present foundation "to take care of expansion in business" by adding another room, 16 ft. x 25 ft. on the south side, within eight feet of the property line, his purpose being to enlarge his waiting rooms and add a separate rest room and toilet for Negro patients.

When appellee was denied the requested permit, first by the Building Inspector, then by the Appeal Board, and finally by the City Council, and had exhausted his administrative remedies, he appealed to the Chancery Court and some twenty-five property owners were permitted to intervene and joined in the City's contention that appellee's application should be denied for the reason that his proposed enlargement of his building would be for a nonconforming use not permitted under the Ordinance and alleged more specifically, in effect, that "the terms of the Ordinance are fair and equitable and in conformity with established building codes; that such nonconforming use, if permitted, would result in a diminution of the value of their property and endanger the public health, safety and welfare, and that neither the terms of the Ordinance or the actions of the Officials of the City of West Helena were arbitrary, illegal, or unreasonable."

The trial court found the issues in favor of Dr. Bockman and "that the denial of the permit of the plaintiff in the circumstances is unreasonable, arbitrary, discriminatory and void; and that the plaintiff is entitled to the relief prayed."

This appeal followed.

The rule appears to be well settled that, in general, the enactment of Zoning Ordinances is constitutional. However, such ordinances being in derogation of the common law, must be reasonable and not arbitrary, must

not unreasonably deprive the property owner of the use of his property, and their enforcement must not be arbitrary, capricious or unreasonable. We said in *City of Little Rock* v. *Sun Building & Developing Company,* 199 Ark. 333, 134 S. W. 2d 582:

"In all the cases in which zoning ordinances have been upheld, it is recognized that such legislation frequently, if not generally, operates to reduce the value of property the use of which is restricted. But these cases are to the effect that such damage does not constitute the taking of private property within the inhibition of the Constitution (Art. 2, § 22) against the taking of private property for public use without making compensation therefor, and that it is not required that the owner be compensated for this loss of value. The theory is that the owner of such property is sufficiently com pensated by sharing in the general benefits resulting from the exercise of the police power. . . . This power may not be arbitrarily used, and must in all cases bear a definite relation to the health, safety, morals and general welfare of the inhabitants of that part of the city where the property zoned is situated."

Here, it appears that the house in question is located in Residential Zone "A" under the terms of the Zoning Ordinance, and was owned and occupied by Dr. Bockman as a Clinic at the time the Ordinance was en acted. He has not used it for residential purposes for several years. It appears undisputed that, under the terms of the Ordinance, Dr. Bockman's use of the property is a nonconforming one.

Section 2 provides: "USES: In each zone as herein established, land and structures may be used only for purposes specified in Section 7 of this Ordinance."

Section 3 provides: "NONCONFORMITY USES: Any use or structure existing at the time of enactment or subsequent amendment of this Ordinance, but not in conformity with its provisions, may be continued with the following limitations: Any use or structure which does not conform to this Ordinance may not be: 1.

Changed to another nonconformity use . . . 3. Extended except in conformity to this Ordinance."

Nor is the proposed use a permitted one as provided in Section 7: "USES AND REQUIREMENTS WITHIN THE ZONES: 1. RESIDENTIAL ZONE 'A' A. PERMITTED USES: In Residential Zone 'A' as hereinabove created and defined, the following uses shall be permitted: Detached one-family dwellings, church, school offering general education course, library, general purpose farm, garden, nursery, private club not conducted for profit, municipal recreation or water supply use; and accessory use."

The "accessory use" referred to in Section 7, as defined in Section 7, "G", could not apply to Dr. Bockman for the reason that he does not make his residence in the structure. This section provides: "G. ACCESSORY USE DEFINED: The phrase 'accessory use' as herein used shall include: Structures and uses (such as private garages and coal sheds) customarily incidental to and on the same lot with a permitted use; customary home occupation, such as offices of a doctor and dressmaker, incidental to a permitted use, provided such occupations are conducted in the main building and only by a person resident in said building."

Section 7, "C" provides: "In Residential Zone 'A', all uses not specifically permitted, or permissible, upon approval of the Appeal Board shall be prohibited." Section "D" provides: "MINIMUM YARD SPACE REQUIREMENTS: In Residential Zone 'A', all structures shall have yard space of not less than 20 feet depth in front of said structure, and 20 feet depth in the rear. All structures shall have side yard space of at least 10 feet on each side."

It is undisputed that the proposed expansion would be within eight feet of the south property line, contrary to the limit of ten feet in said Section "D". It also appears that the City offered to permit appellee to enclose the porch and use it for an additional waiting room space and for toilet or bathroom purposes.

When all of the facts are considered, we have concluded that when the City denied appellee a permit to expand his structure for a nonconforming use to within eight feet of the property line on a small, crowded lot, in a growing residential section, it acted within its proper police powers to protect the health, safety, morals and general welfare of its inhabitants, did not act in an arbitrary or unreasonable manner, and that the preponderance of the testimony is against the trial court's finding to the contrary.

Accordingly, the decree is reversed and the cause remanded with directions to enter a decree consistent with this opinion.