CITY OF FAYETTEVILLE, Arkansas, a
Municipal Corporation *v.* S & H, INC., a
Corporation et al

76-82                                          547 S.W. 2d 94

Opinion delivered February 28, 1977
(In Banc)
[Rehearing denied March 28, 1977.]

*James N. McCord, II.,* City Atty., for appellant.

*Ball & Mourton,* by: *E. J. Ball,* for appellees.

CONLEY BYRD, Justice. By this appeal the City of

Fayetteville raises two issues — *i.e.* (1) can a sign ordinance prohibiting flashing or blinking signs be applied to existing signs at the time the ordinance becomes effective and (2) can a non-conforming "on-site" sign be constitutionally amortized by the City over a period of seven years? These issues were submitted to the trial court upon a stipulated record and from a judgment holding that such interests were vested and that the sign ordinance could not constitutionally be applied to such vested interests, the City appeals.

Ordinance No. 1893 of the City of Fayetteville states its purposes and the City's findings in this language:

"WHEREAS, the Board of Directors of the City of Fayetteville, Arkansas, believes that the construction, repair, alteration, location and maintenance of signs should be controlled within the city limits of the City of Fayetteville, Arkansas, in order to protect the public investment in the streets and highways, to promote the safety and recreational value of public travel and to preserve natural beauty, and

WHEREAS, the purpose of this Ordinance is to promote the reasonable, orderly, and effective display of signs while remaining consistent with the city policy to protect the public investment in the streets and highways, to promote the safety and recreational value of public travel and to preserve natural beauty, and

WHEREAS, the Board of Directors has made the following findings of fact:

(1) That the uncontrolled proliferation of signs is hazardous to the users of streets and highways within the limits of the City of Fayetteville, Arkansas.

(2) That a large and increasing number of tourists have been visiting the City of Fayetteville, Arkansas, and as a result the tourist industry is a direct source of income for citizens of said city, with an increasing number of persons directly or indirectly dependent upon the tourist industry for their livelihood.

(3) Scenic resources are distributed throughout the city, and have contributed greatly to its economic development, by attracting tourists, permanent and part-time residents, and new industries and cultural facilities.

(4) The scattering of signs throughout the city is detrimental to the preservation of those scenic resources, and so to the economic base of the city, and is also not an effective method of providing information to tourists about available facilities.

THEREFORE, BE IT ORDAINED BY THE BOARD OF DIRECTORS OF THE CITY OF FAYETTEVILLE, ARKANSAS:"

The specific provisions of the ordinance as amended states:

17B-7(f) ". . . It shall be unlawful for any person to . . . continue in operation an attraction device or sign which flashes, blinks or is animated."

17B-5(a) "Non-conforming signs. For the purpose of this section, a non-conforming sign shall be defined as a sign which does not conform with the provisions of this chapter. All on-site non-conforming signs not otherwise prohibited by the provisions of this chapter shall be removed or shall be altered so as to conform with the provisions of this chapter within 7 years from the effective date of Ordinance 1983 (1-19-73)."

The ordinance does not prohibit all signs. The signs in question are non-conforming because of the size, height and set-back requirements.

The record, as abstracted, shows that the signs involved are constructed of structural steel imbedded in concrete. The Holiday Inn sign has been in continuous use for more than 13 years. It had an original cost of more than $10,000 and the replacement cost would be in excess of $20,000. The "Minute Man" sign originally cost $5,811 and has a replacement value in excess of $9,000. The original cost of the Whit Chevrolet

sign was in excess of $10,000 and its replacement cost would exceed $15,000. The Chief Motel sign originally cost in excess of $6,000 and the replacement cost would exceed $12,000. The cost of eliminating the blinking characteristics of the Holiday Inn sign is $1,000, the Minute Man sign $1,500, the Whit Chevrolet sign $3,000 and the Chief Motel sign $1,000.

In the trial court the City contended that the flashing and blinking signs were inimical to the safety of the traveling public and furnished proof to that effect. No such contention has been made with respect to the restrictions on size, height and set-back requirements.

To reverse the trial court's holding that the seven year amortization for non-conforming uses was constitutionally invalid as applied to appellees' signs, the City relies upon the following cases from other jurisdictions: *Art Neon Company v. City & County of Denver*, 488 F. 2d 118 (10th Cir. 1973); *E. B. Elliott Advertising Company v. Metropolitan Dade County*, 425 F. 2d 1141 (5th Cir. 1970); *Grant v. Mayor and Council of Baltimore*, 212 Md. 301, 129 A. 2d 363 (1957); *National Advertising Company v. County of Monterey*, 83 Cal. Rptr. 577, 464 P. 2d 33 (1970); *City of Escondido v. Desert Outdoor Advertising Co., Inc.*, 106 Cal. Rptr. 172, 505 P. 2d 1012 (1973); *Village of Larchmont v. Sutton*, 217 N.Y.S. 2d 929 (1961); *Rochester Poster Advertising Co. v. Town of Brighton*, 357 N.Y.S. 2d 346 (1974); and *Naegele Outdoor Advertising Company v. Village of Minnetonka*, 281 Minn. 492, 162 N.W. 2d 206 (1968). In relying upon these cases, appellant argues and quotes from *Grant v. Mayor & City Council of Baltimore, supra*, as follows:

"The court in *Grant v. Baltimore*, 212 Md. 301, 129 A. 2d 363 (1957), upheld the constitutionality of a five year amortization period for non-conforming signs. In what is one of the leading opinions on the point, the court reviewed the problem of non-conforming uses as it has developed since the inception of zoning and pointed out that early optimism about the spontaneous withering away of non-conforming uses has proved erroneous. Describing the inability to eliminate non-conforming uses as 'the fundamental problem facing zoning,' the court concluded that 'the only positive method yet devised of eliminating non-conforming uses is to determine

the normal useful remaining economic life of the structure devoted to the use and prohibit the owner from using it for the offending use after the expiration of that time.' In its opinion, the court states:

'The distinction between an ordinance that restricts future use and one that requires existing uses to stop after a reasonable time, is not a difference in kind but one of degree, and, in each case, constitutionality depends on overall reasonableness, on the importance of the public gain in relation to the private loss.

\* \* \* \*

There is no difference in kind, either, between limitations that prevent the adding to or extension of a non-conforming use, or provisions that the right to use is lost if abandoned or if the structure devoted to the use is destroyed, or the denial of a right to substitute a new use for the old, all of which are common if not universal in zoning laws and all of which are established as constitutional and valid, on the one hand, and a requirement on the other, that an existing non-conformance must cease after a reasonable time. The significance and effect of difference in degrees in any given case depends on circumstances, environment, and length of the period allowed for amortization."

The authorities upon which the City relies approach their conclusions upon this reasoning — *i.e.* the regulation of non-conforming signs fall within the zoning authority of cities and since the right of a city to zone is constitutionally permissible under the police power, the regulation of non-conforming signs is constitutionally permissible under the police power. If we should take the City's argument that non-conforming signs can be lawfully amortized even though they are not inimical to the health, safety or morals, then it would follow that the City could lawfully amortize the buildings in any area declared to be an urban renewal area upon the same basis — *i.e.* it would enhance the economic base of the city. The City in relying upon these authorities does not attempt to grapple with the pragmatical result of such rulings when applied to the facts before us — *i.e.* that the appellees' property rights are being taken purely for the economic benefit of

the public without payment of just compensation to the property owner. However, in reviewing our own authorities on the subject, we find that our Constitution, Art. 2 § 22, provides:

> "The right of property is before and higher than any constitutional sanction; and private property shall not be taken, appropriated or damaged for public use, without just compensation therefor."

In cases involving vested interests that were not inimicable to the health, safety or morals of the community under Art. 2 § 22, *supra*, we have held differently to the authorities relied on by appellants. For instance, in *Ark. State Hwy. Commission v. Turk's Auto Corp., Inc.*, 254 Ark. 67, 491 S.W. 2d 387 (1972), the issue was whether the Highway Commission by constructing a new highway within 1000 feet of an automobile salvage yard could force the salvage yard to expend approximately $7,000 to screen the salvage yard from the view of the highway. In holding that the Highway Commission's demand on the property owner amounted to a taking of private property without just compensation we said:

> "It is undisputed that at the time of the enactment of the Act in question the appellee was conducting a lawful business. Article Two, Section 22, of the Constitution of our State provides:
>
> 'The right of property is before and higher than any constitutional sanction; and private property shall not be taken, appropriated or damaged for public use, without just compensation.'

It was aptly said in *Ark. State Highway Comm'n v. Union Planters National Bank*, 231 Ark. 907, 333 S.W. 2d 904 (1960):

> 'The general rule at least is, that while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking. . . We are in danger of forgetting that a strong public desire to improve the public condition is not enough to warrant achieving the desire by a shorter cut than the con-

stitutional way of paying for the change.' "

Likewise in *Blundell v. City of West Helena,* 258 Ark. 123, 522 S.W. 2d 661 (1975), we had before us a non-conforming use of a mobile home park. In stating the issue and in discussing the rights of a pre-existing business operation we stated:

> "This appeal brings into sharp focus the conflict between private property rights and the right of municipal government to control the owner's use of property. . . .

> In construing the city ordinances and their effect, we must remember that zoning ordinances, being in derogation of the common law, must be strictly construed in favor of the property owner and that, under our constitution, the right of private property is regarded as before and higher than constitutional sanction. See *City of Little Rock v. Williams,* 206 Ark. 861, 177 S.W. 2d 924; *Poole v. State,* 244 Ark. 1222, 428 S.W. 2d 628; Art. 2, § 22, Constitution of Arkansas. Attempts to deprive the owner of a pre-existing use have been regarded as unconstitutional as a taking of property without compensation or in violation of due process of law. *Silver v. Zoning Board of Adjustment,* 435 Pa. 99, 255 A. 2d 506; *Hoffmann v. Kinealy,* 389 S.W. 2d 745 (Mo., 1965); *McCaslin v. City of Monterey Park,* 163 Cal. App. 2d 399, 329 P. 2d 522 (1958); *City of Corpus Christi v. Allen,* 152 Tex. 137, 254 S.W. 2d 759 (1953); *O'Connor v. City of Moscow,* 69 Idaho 37, 202 P. 2d 401, 9 ALR 2d 103 (1949). See *City of Little Rock v. Sun Building & Development Co.,* 199 Ark. 333, 134 S.W. 2d 582. See also, *Amereihn v. Kotras,* 194 Md. 591, 71 A. 2d 865 (1950); *People v. Miller,* 304 N.Y. 105, 106 N.E. 2d 34 (1952).

> . . .

> It is widely recognized that a property owner has vested rights in a non-conforming use of his property. An apt articulation of the rule governing the vesting of such rights, as we apply it to the facts of this case, is found in the following language of the Kentucky Court of Appeals in *Darlington v. Board of Councilmen,* 282 Ky.

778, 140 S.W. 2d 392 (1940):

> . . . The mere ownership of property which could be utilized for the conduct of a lawful business does not constitute a right to so utilize it (*Cayce v. City of Hopkinsville*, 217 Ky. 135, 289 S.W. 223) which cannot be terminated by the enactment of a valid zoning ordinance, as such a concept involves an irreconcilable contradiction of terms. It would seem, therefore, that the right to utilize one's property for the conduct of a lawful business not inimicable to the health, safety, or morals of the community, becomes entitled to constitutional protection against otherwise valid legislative restrictions as to locality, or, in other words, becomes 'vested' within the full meaning of that term, when, prior to the enactment of such restrictions, the owner has in good faith substantially entered upon the performance of the series of acts necessary to the accomplishment of the end intended."

When our prior decisions are considered in connection with the City's finding that the existence of signs throughout the City were detrimental to its scenic resources and therefore to its economic base, we must conclude that the seven year provisions of the ordinance amortizing non-conforming on-site signs used in connection with a going business, that are not inimical to the health, safety or morals of the City, amounts to a taking of the appellees' properties without just compensation therefor in violation of Art. 2 § 22, *supra*.

However, the prohibition against flashing or blinking signs falls within that area of police regulation that is exercised for the protection of the health and morals of the people, *Thompson v. Wiseman*, 189 Ark. 852, 75 S.W. 2d 393 (1934). On its face the portion of the ordinance prohibiting the use of flashing and blinking signs would appear to be a matter that could affect the safety or health of the City. To that extent we hold that the trial court erred in holding that the appellees had a vested right that was protected by Art. 2 § 22 *supra*.

Reversed in part.

156

GEORGE ROSE SMITH, FOGLEMAN and ROY, JJ., dissent.

HICKMAN, J., concurs.

JOHN A. FOGLEMAN, Justice, concurring in part, dissenting in part. I fully concur in that part of the majority opinion which upholds that portion of the ordinance prohibiting flashing or blinking signs; but I am compelled to express my disagreement with the remainder of the majority's holding and opinion.

In order that my position be made as clear as possible, I feel it is appropriate that some additional background be set out.

Appellees brought this proceeding against the City of Fayetteville seeking a declaratory judgment that Fayetteville City Ordinance 1893, as amended, is void on its face and as applied to them. The ordinance is a comprehensive sign ordinance, providing, among other things, for height, display surface and setback limitations and requiring that on-site, non-conforming signs be altered to conform or be removed from the premises within seven years. The ordinance also prohibits fluctuating illumination, or flashing signs. Each of the appellees, either as owner, lessor, or lessee, operates a business in Fayetteville which utilizes "on-site, free-standing" signs for identification and advertisement. It was stipulated that all of the appellees have signs which are non-conforming. They asserted that the ordinance is void because it amounts to a taking of their property (signs) for public use without just compensation in violation of the due process clauses of Amendment V to the Constitution of the United States and § 8 of Art. 2 of the Arkansas Constitution as well as § 22 of Art. 2 of the state constitution. They also alleged that the ordinance was unconstitutionally vague in violation of the due process clause of Amendments V and XIV of the United States Constitution and Art. 2, § 8 of the Constitution of Arkansas. Appellees sought a permanent injunction against the enforcement of the ordinance against them.

The circuit court held that the height, display surface, setback and fluctuating illumination restrictions contained in

§§ 17B-5 and 17B-7 of the ordinance, as amended, were constitutional; but it further held that the requirement, prescribed by § 17B-5 as amended, that on-site, non-conforming signs be removed upon expiration of a seven year amortization period and the prohibition against continuing operation of existing fluctuating illumination set out in § 17B-7 (f) were unconstitutional as applied to the appellees.

By stipulation, the evidence consisted of exhibits and affidavits of persons who would otherwise have testified. It was stipulated that all the signs and businesses of appellees were properly zoned C-2, Thoroughfare Commercial; the signs were on-site, freestanding signs; appellees would be required by the provisions of Ordinance 1893, as amended, to immediately eliminate flashing characteristics of their signs, but would not be required to alter them to comply with size, height and setback requirements prescribed by the ordinance until the expiration of the seven years amortization period provided for on-site, non-conforming signs.

On appeal appellant questions the holding of the court that the sections of the ordinance were unconstitutional as applied to appellees.

This litigation arises from the constant friction between two inherent rights — the right of private property and the police power, both of which we consider to exist without constitutional grant. See Art. 2, §§ 2 and 22, Constitution of Arkansas; *Geurin* v. *City of Little Rock,* 203 Ark. 103, 155 S.W. 2d 719; *Hickenbottom* v. *McCain,* 207 Ark. 485, 181 S.W. 2d 226, cert. den. 323 U.S. 777, 65 S. Ct. 189, 89 L. Ed. 621.

The boundary between an unlawful taking or damaging of property rights without compensation and the legitimate but uncompensated taking or damaging through the exercise of the police power is sometimes a thin, indistinct one which is difficult to locate precisely (see e.g., *Blundell* v. *City of West Helena,* 258 Ark. 123, 522 S.W. 2d 661), and it is not necessarily permanent, stationery or inflexible. See *Naegele Outdoor Adv. Co.* v. *Village of Minnetonka,* 281 Minn. 492, 162 N.W. 2d 206 (1968); *Block* v. *Hirsh,* 256 U.S. 135, 41 S. Ct. 458, 65 L. Ed. 865, 16 ALR 165 (1921); *Wulfsohn* v. *Burden,* 241 N.Y. 288, 150 N.E. 120, 43 ALR 651 (1925); *Opinion of the*

*Justices*, 103 N.H. 268, 169 A. 2d 762. The police power is admittedly incapable of precise definition and its lines of delimitation are not clearly marked. *Williams* v. *State,* 85 Ark. 464, 108 S.W. 838; *Dreyfus* v. *Boone,* 88 Ark. 353, 114 S.W. 718; *Bennett* v. *City of Hope,* 204 Ark. 147, 161 S.W. 2d 186. See also, *Pierce Oil Corp.* v. *City of Hope,* 127 Ark. 38, 191 S.W. 405, affd., 248 U.S. 498, 39 S. Ct. 172, 63 L. Ed. 381; *City of Ft. Smith* v. *Hunt,* 72 Ark. 556, 82 S.W. 163; *Berman* v. *Parker,* 348 U.S. 26, 75 S. Ct. 98, 99 L. Ed. 27 (1954). Yet it is very different from the power of eminent domain. *Herring* v. *Stannus,* 169 Ark. 244, 275 S.W. 321; *McKibbin* v. *Ft. Smith,* 35 Ark. 352. See also, *Hogue* v. *Housing Authority of North Little Rock,* 201 Ark. 263, 144 S.W. 2d 49. The validity of a police regulation necessarily depends upon the particular facts and circumstances involved. *Williams* v. *State,* supra. See also, *Berman* v. *Parker,* supra.

The security of our social order, the life and health of our citizens, the enjoyment of private and social life and the beneficial use of property are dependent upon the police power. *Geurin* v. *City of Little Rock,* supra. We have held that municipal authorities have the duty to exercise the police power where there is a public need for it. *Springfield* v. *City of Little Rock,* 226 Ark. 462, 290 S.W. 2d 620. The police power, when exercised to promote the health, comfort, safety and welfare of society, is very broad and comprehensive, and its limits are not definitely established. *City of Helena* v. *Dwyer,* 64 Ark. 424, 42 S.W. 1071, 39 LRA 266, 62 Am. St. Rep. 206; *Bennett* v. *City of Hope,* supra. Although it has been said that it may be used in any *manner* not prohibited, it is not without limitations. *Hickenbottom* v. *McCain,* supra; *Noble* v. *Davis,* 204 Ark. 156, 161 S.W. 189; *Bennett* v. *City of Hope,* supra; *City of Helena* v. *Dwyer,* supra; *Carter* v. *State,* 255 Ark. 225, 500 S.W. 2d 368, cert. den., 416 U.S. 905, 94 S. Ct. 1610, 40 L. Ed. 2d 110; *Arkansas State Hwy. Comm'n* v. *Union Planters National Bank,* 231 Ark. 907, 333 S.W. 2d 904.

The exercise of the police power by legislating to prohibit or prevent that which is inimical to the public health, safety and welfare[1] is an inherent power of sovereign-

---

[1]The public welfare has been taken by us to include public convenience and comfort and general prosperity. *Williams* v. *State,* supra; *Beaty* v. *Humphrey,* 195 Ark. 1008, 115 S.W. 2d 559; *Central Clay Drainage District* v. *Booser,* 143 Ark. 18, 219 S.W. 336, 9 ALR 1021.

ty, which is necessary for the protection of the citizens of the state, and when delegated by the state to its municipal corporations, is tested on judicial review in this state to determine whether constitutional limits have been transcended. *Geurin* v. *City of Little Rock,* supra; *City of Helena* v. *Dwyer,* supra; *Williams* v. *State,* supra; *Replogle* v. *City of Little Rock,* 166 Ark. 617, 267 S.W. 353, 36 ALR 1333; *Bennett* v. *City of Hope,* supra. Judicial review tests legislation in the assumed exercise of the police power in the interest of the health, safety and welfare of the public, not to review the exercise of legislative discretion as to the necessity for the exercising of the power in a given case, but to determine whether the legislation bears a real or substantial relationship to the protection of public health, safety and welfare, in order that personal rights and property rights not be subjected to arbitrary or oppressive, rather than reasonable, invasion. *Union Carbide Carbon Corp.* v. *White River District,* 224 Ark. 558, 275 S.W. 2d 455; *City of Helena* v. *Dwyer,* supra; *Williams* v. *State,* supra; *Missouri & N.A. R. Co.* v. *State,* 92 Ark. 1, 121 S.W. 930, 135 Am. St. Rep. 164, 31 LRA (n.s.) 861; *Noble* v. *Davis,* supra; *Dreyfus* v. *Boone,* supra; *Pierce Oil Corp.* v. *City of Hope,* supra. See also, *McKee* v. *American Trust Co.,* 166 Ark. 480, 266 S.W. 293.

The legislative body or its duly constituted agency exercising the power is the proper forum for determining by a reasonable enactment what the health, morals and safety of the public require for the common good. *Wright* v. *DeWitt School District No. 1,* 238 Ark. 906, 385 S.W. 2d 644. See also, *Berman* v. *Parker,* supra. It may prohibit all things hurtful to the comfort, safety and welfare of the people and, in exercise of the power, has a wide discretion in determining what the public interest demands and what measures are necessary to meet these requirements. *Carter* v. *State,* supra; *Goldman & Co.* v. *City of North Little Rock,* 220 Ark. 792, 249 S.W. 2d 961. See also, *Berman* v. *Parker,* supra. The legislative statement of purpose is not conclusive or controlling, and an ordinance which has no real, substantial or rational relationship to the public safety, health, morals or general welfare is a palpable invasion of rights secured by fundamental law and cannot be sustained by legislation under the guise of police regulations. *Noble* v. *Davis,* supra; *Dreyfus* v. *Boone,* supra; *Bachman* v. *State,* 235 Ark. 339, 359 S.W. 2d 815.

When private property is taken or destroyed by legislation ostensibly in the interest of the public health, safety and welfare, the courts must scrutinize it to see whether it relates to, and is convenient and appropriate to promote its purported ends. *City of Helena* v. *Dwyer,* supra; *Herring* v. *Stannus,* supra. See also, *Dreyfus* v. *Boone,* supra. Such an ordinance must be sustained by the courts unless it appears to be clearly outside the scope of reasonable and legitimate regulation. *Williams* v. *State,* supra; *Replogle* v. *City of Little Rock,* supra; *Dreyfus* v. *Boone,* supra; *Herring* v. *Stannus,* supra; *City of Little Rock* v. *Smith,* 204 Ark. 692, 163 S.W. 2d 705. It is the duty of the courts, in testing the validity of a regulatory ordinance, to resolve all doubts in favor of the legislative action. *Williams* v. *State,* supra; *Replogle* v. *City of Little Rock,* supra; *Dreyfus* v. *Boone,* supra; *City of Little Rock* v. *Smith,* supra; *Hickenbottom* v. *McCain,* 207 Ark. 485, 181 S.W. 2d 226. The discretion as to the manner and extent of the use of the police power abides in the city's governing body, and is presumed to be valid until the contrary appears. Action of the council may be set aside on judicial review only when the court can say that the city's governing body acted in an arbitrary or unreasonable manner. *Pierce Oil Corp.* v. *City of Hope,* supra.

The record discloses that all the signs involved in this litigation are located in a particular area of the City. of Fayetteville within a few blocks on College Avenue, which is a heavily travelled portion of U.S. Highway 71-B. Each appellee owns, maintains and operates "flashing" (or fluctuating illumination) signs which identify and advertise their respective businesses. All were in existence for some time before the passage of the ordinances in question. One of them was erected as early as 1957 and the last as late as 1968. The original ordinance was enacted in December, 1972.

Assuming that appellees are correct in their contention that they have a vested property right in their signs and their characteristics and the uses made of them at the time of the passage of the ordinance, the requirements of the ordinance are not necessarily invalid. It is well settled that every owner of property, however absolute and unqualified his title may be, holds it under the implied liability that his use of it shall not be injurious to the rights of the community and the use is always subject to regulations that are necessary to the com-

mon good, health, safety and general purpose and welfare of the community. *Fort Smith v. Hunt,* 72 Ark. 556, 82 S.W. 163. *Herring v. Stannus,* 169 Ark. 244, 275 S.W. 321; *Hogue v. Housing Authority of North Little Rock,* supra, 201 Ark. 263. See also, *Howard v. State,* 154 Ark. 430, 242 S.W. 818. The possession and enjoyment of all rights, including rights of property, are subject to such reasonable conditions as may be deemed essential to the safety, health, peace, good order and morals of the community by the governing authority. *Dreyfus v. Boone,* 88 Ark. 353, 144 S.W. 718; *Herring v. Stannus,* supra; *Hogue v. Housing Authority of North Little Rock,* supra.

Any property may be used so as to bring it within the operation of the police power. *Howard v. State,* supra. All property and vested rights are held subject to the fair exercise of the police power. *St. Louis - San Francisco Ry. Co. v. State,* 182 Ark. 409, 31 S.W. 2d 739; *McKibbin v. Ft. Smith,* 35 Ark. 352. Its exercise is always justified when it can be said to be in the interest of the public health, safety and comfort, and when it is, private rights must yield to their security under reasonable laws. *Beaty v. Humphrey,* 195 Ark. 1008, 115 S.W. 2d 559; *City of Little Rock v. Smith,* supra, 204 Ark. 692. Police regulations which direct the use of private property so as to prevent its proving pernicious to the citizens at large are not void, although they may, in some measure, interfere with private rights without providing compensation. *McKibbin v. Ft. Smith,* supra. A municipal corporation may even destroy private property without compensating the owner where the property, by the manner of its use, which the owner cannot or will not correct, is injurious to the public welfare, safety, health or morality. *Springfield v. City of Little Rock,* supra, 226 Ark. 462.

We have considered that it is a well-established principle that private enterprise must yield to public welfare. *Arkansas State Highway Comm'n. v. Bingham,* 231 Ark. 934, 333 S.W. 2d 728. A city may prohibit certain uses in certain districts. *Goldman v. City of North Little Rock,* 220 Ark. 792, 249 S.W. 2d 961. But regulations of the use of property must be reasonable and not arbitrary. *Bachman v. State,* 235 Ark. 339, 359 S.W. 2d 815; *Goldman v. City of North Little Rock,* supra. It is also well established in this state that a city council, commission or similar municipal authority has a wide discretion in the exercise of its power and duty to make reasonable provision by or-

dinance for the safety of persons and property using its streets, even though the property of adjoining owners may be adversely affected. *City of Ft. Smith* v. *Van Zandt,* 197 Ark. 91, 122 S.W. 2d 187. The mere fact that a property owner must make some expenditure to comply with a valid regulation under the police power exercised in the interest of the common welfare, does not require that the owner be compensated. *Kansas City Southern Ry. Co.* v. *City of Mena,* 123 Ark. 323, 185 S.W. 290; *St. Louis Southwestern Ry. Co.* v. *Royall,* 75 Ark. 530, 88 S.W. 555. See also, *St. Louis & San Francisco R. Co.* v. *City of Fayetteville,* 75 Ark. 534, 87 S.W. 1174.

We have recognized that zoning legislation generally operates to reduce the value of property the use of which is restricted, but that, where the legislative power bears a definite relation to the health, safety, morals and general welfare of the inhabitants of that part of the city where the property is located, and is not arbitrarily exercised, the damage does not constitute the taking of private property within the inhibition of Art. 2 § 22 of the Constitution of Arkansas prohibiting the taking or damaging of private property for public use. *City of West Helena* v. *Bockman,* 221 Ark. 667, 256 S.W. 2d 40; *City of Little Rock* v. *Sun Building & Developing Co.,* 199 Ark. 333, 134 S.W. 2d 582. The theory is that the owner of the property is sufficiently compensated by sharing in the general benefits resulting from the exercise of the police power.

We have held that a property owner has vested rights in a non-conforming use of property and that attempts to deprive the owner of a preexisting use have been regarded in other jurisdictions as unconstitutional as a taking of property without compensation or in violation of due process of law. *Blundell* v. *City of West Helena,* 258 Ark. 123, 522 S.W. 2d 661. I do not, however, consider *Blundell* as controlling here, as appellee, the majority and the circuit judge seem to have, inasmuch as the question there was whether the owner was attempting to extend a non-conforming use and whether the non-conforming use existed at the time of the adoption of the zoning ordinance. The ordinance there prohibited the extension of a non-conforming use. There was no effort to recognize, and make provision for the elimination of, the

non-conforming use we found to exist.[2]

The sections of the ordinance questioned here, insofar as the law of Arkansas is concerned, present an entirely new concept in the attempted exercise of the police power. They put restrictions on the height and display surface area of signs of the type used by appellees and make certain setback requirements for them in districts zoned commercial in the city and require that on-site, non-conforming signs be altered to conform or be removed within seven years from the effective date of the ordinance. The circuit judge, after having thoroughly considered decisions from other jurisdictions which sustained ordinances requiring termination of non-conforming signs within a specified period without providing for any compensation to the owner, held these sections unconstitutional as applied to appellees, viewing them in the light of our decisions upholding vested, lawful, pre-existing property rights against attempts to eliminate them through zoning ordinances which did not provide for compensation to the owner. The trial court did hold that the ordinance was valid on its face insofar as the general restrictions were concerned, and I agree with that holding. It appears to me, however, that the appellees failed to meet their burden of showing that the sections of the ordinance requiring them to conform to the prescribed standards were invalid, either on their face or as applied to them.

The same presumption of validity that attends other attempted exercises of the police power applies to an ordinance regulating the use of signs; furthermore, one attacking it bears the same burden of showing invalidity. *Board of Adjustment* v. *Osage Oil & Transportation, Inc.*, 258 Ark. 91, 522 S.W. 2d 836.

---

[2]Another important distinction is that the principal use of the property was involved in *Blundell,* but the use involved here is not a principal use, as defined by Anderson, American Law of Zoning, (1968) vol. 2, § 12.11, p. 525. "Principal use: the primary purpose or function that a lot serves or is intended to serve." Also see Metzenbaum, The Law of Zoning, (1930) page 14 where the distinction is discussed: "Though zoning is composed of a variety of restrictions or limitations, its chief and principal characteristic — as distinguished from other restrictive legislation — is the provision which places the restriction upon the *use* of property. Indeed, the 'Use' limitation may be said to be the cardinal and primary motif of comprehensive zoning."

The city board made the following findings of fact in the ordinance:

That a large and increasing number of tourists have been visiting the City of Fayetteville, Arkansas, and as a result the tourist industry is a direct source of income for citizens of said city, with an increasing number of persons directly or indirectly dependent upon the tourist industry for their livelihood.

Scenic resources are distributed throughout the city, and have contributed greatly to its economic development, by attracting tourists, permanent and part-time residents, and new industries and cultural facilities.

The scattering of signs throughout the city is detrimental to the preservation of those scenic resources, and so to the economic base of the city, and is also not an effective method of providing information to tourists about available facilities.

The trial court held that the height, display surface area, and setback restrictions can and will help preserve natural beauty in the area.

An ordinance of this sort may not be struck down merely because aesthetic purposes are taken into consideration, if those purposes are merely incidental to the exercise of the police power in the interest of the public health, safety, morals or welfare. *Herring* v. *Stannus,* 169 Ark. 244, 275 S.W. 321. See also, *Bachman* v. *State,* supra, 235 Ark. 339. As heretofore pointed out, public welfare is a broad concept encompassing the general prosperity of the community. The city board found the existence of signs throughout the city to be detrimental to its scenic resources and thereby to the economic base of the city because of the contribution the scenic resources make to economic development by attracting tourists, permanent and part-time residents, new industries and cultural facilities. This has been held to be a constitutionally permissible objective under the police power of the state. *E. B. Elliot Advertising Co.* v. *Metropolitan Dade County,* 425 F. 2d 1141 (5 Cir., 1970). While these findings of the

board are not conclusive on judicial review, appellees have not attempted to show that there is no rational basis for them. It certainly is not manifest that this is untrue and this court is in no position to say that the board stated a non-existent fact, so we cannot take judicial notice that they are without foundation. See, *Opinion of the Justices,* supra, 103 N.H. 268. The fact that aesthetic considerations were a significant factor in the exercise of the police power should not invalidate an ordinance for an otherwise legitimate police-power objective. *Naegele Outdoor Advertising Co.* v. *Minnetonka,* 162 N.W. 2d 206 (1968). The question of unreasonableness or arbitrariness is plainly one of fact. *Board of Adjustment* v. *Osage Oil & Transportation, Inc.,* supra. In the absence of anything on the face of the ordinance or in the evidence to show that it was arbitrary or unreasonable, the courts must presume it to be valid. *City of Helena* v. *Miller,* 88 Ark. 263, 114 S.W. 237. We long ago upheld an ordinance which prohibited certain types of signs in a designated portion of a city treating it as a zoning ordinance. *Berkau* v. *City of Little Rock,* 174 Ark. 1145, 298 S.W. 514. On the record before us, there is no basis for our holding the ordinance invalid, insofar as it prospectively prohibits the type of signs involved in the zone in which appellees' property is located.

In this respect, this case is quite different from *Bachman* v. *State,* supra, 235 Ark. 339, where we held a statute invalid on its face. We held the statute to be arbitrary and unreasonable because it prohibited junkyards within one-half mile of any paved highway in the state without affording the owner of an existing, lawful business any opportunity to preserve it by making changes or alterations which would not offend the intended purpose or purview of the act. The only purpose of that act was to protect the travelling public from unsightly views, but we recognized that if the unsightly view could be concealed by a hill, forest, a high fence or inside a building, there could be no offense to the aesthetic senses, peace, health or happiness of a traveller. The ordinance here does permit changes or alterations to bring the signs into conformity within seven years. If it did not allow a reasonable time for changes or alterations, we would be presented with an entirely different question. Furthermore, the purposes of the ordinance beneficial to the general purpose in question here are more extensive than that in *Bachman.*

The serious question is the validity of the ordinance as applied to appellees, whose signs have been lawful until the passage of the ordinance, when they suddenly became a non-conforming use of appellees' property. But we must first scrutinize the attempted elimination of existing non-conforming signs in general. In viewing this matter, I see the basic ordinance as a zoning ordinance. It permits signs in certain zoning districts that would be prohibited in others. Certain restrictions are applicable only to designated zoning districts. The city is authorized by the state zoning laws to provide for elimination of uses not in conformance with the provisions of a zoning ordinance. Ark. Stat. Ann. § 19-2829b (Repl. 1968).

The states' struggle with the problem of non-conforming uses and their limitation on the effectiveness of proper zoning objectives has produced these approaches to their elimination: (1) taking by eminent domain; (2) invoking the law of nuisance; (3) refusing resumption after a period of non-use, referred to as abandonment; (4) prohibiting or limiting extension or repairs; (5) offering inducements to termination; and finally, (6) amortization. Although the first five approaches may be of limited effectiveness and feasibility, the third and fourth approaches are invasions of what have been considered to be vested property rights; and these invasions have been held to be valid. See, Annot., 22 ALR 3d 1134. Only time can tell whether the sixth and newest approach will be effective.

We have recognized that there are limitations upon continuance of non-conforming uses and that vested property rights in such uses are not perpetual. Cf. *Art Neon Co.* v. *City & County of Denver*, 488 F. 2d 118 (1973). For instance: an owner has no right to extend such use to other property, *Evans* v. *City of Little Rock*, 221 Ark. 252, 253 S.W. 2d 347; his right to restore a damaged building which had been occupied by a non-conforming use may be prohibited, *Moffatt* v. *Forrest City*, 234 Ark. 12, 350 S.W. 2d 327; he has no right to resume a non-conformnng use after a period of abandonment, *Branch* v. *Powers*, 210 Ark. 836, 197 S.W. 2d 928. The distinction between an ordinance which restricts future uses, or prevents addition to or extension of a non-conforming use, or provides for loss of the right to use by abandonment or by destruction

of a structure, or denies the right of substitution of one use for another, all of which have been established as constitutionally valid, and one which requires the termination of an existing non-conforming use after a reasonable time is not one of kind, but is one of degree. *Grant* v. *Mayor & City Council of Baltimore*, supra, 212 Md. 301; *Art Neon Co.* v. *City & County of Denver*, supra.

In the sense used in zoning cases, arbitrary means " '[a]rising from unrestrained exercise of the will, caprice, or personal preference; based on random or convenience selection or choice, rather than on reason or nature;' . . . decisive but unreasoned action." *W. C. McMinn Co., Inc.* v. *City of Little Rock*, 257 Ark. 442, 516 S.W. 2d 584. I cannot say, on the record before us, that the provision for elimination of non-conforming signs is arbitrary or unreasonable.

The amortization approach to the problem of non-conforming uses means eliminating them by a provision which requires the termination of a non-conforming use of property at the expiration of a specified period of time. See, Annot, 22 ALR 3d 1134; 82 Am. Jur. 2d 702, § 188.

Insofar as Arkansas is concerned, the "amortization approach" is a new attempt to deal with the perplexing problem of non-conforming uses, which is ever present in zoning cases. This ordinance would allow appellees to continue to use their present non-conforming signs (except for the "flashing" characteristic) for a period of seven years, after which they will have to be removed or brought into conformity with the requirements of the ordinance. The question is whether this requirement constitutes the taking of property without just compensation. A majority of jurisdictions considering the matter have approved provisions for amortization of non-conforming uses if they are reasonable. See Annot, 22 ALR 1134; 82 Am. Jur. 2d 702, § 188. Appellees agree that this is the case, but urge that we adopt the view the Missouri Supreme Court expressed in *Hoffmann* v. *Kinealy*, 389 S.W.2d 745 (Mo., 1965) where the minority view was adopted. That decision has been severely criticized by legal writers. See *LaChapelle* v. *Goffstown*, 107 N.H. 485, 225 A. 2d 624, 22 ALR

3d 1128 (1967).[3] Other jurisdictions do not fully support the Missouri view relied upon by appellee. In *DeMull* v. *Lowell,* 368 Mich. 242, 118 N.W. 2d 232 (1962) and *Central Advertising Co.* v. *Ann Arbor,* 42 Mich. App. 59, 201 N.W. 2d 365, the court held that there was no statutory authority for amortization. In *United Advertising Corp.* v. *Raritan,* 11 N.J. 144, 93 A. 2d 362 (1952) a statute specifically gave the right to maintain non-conforming signs. *Akron* v. *Chapman,* 160 Ohio State 382, 52 Ohio Ops. 242, 116 N.E. 2d 697, 42 ALR 2d 1140 is a case involving junkyards. It may well be that different approaches to the problem must be taken for different types of non-conforming uses. See, Annot, 22 ALR 3d 1134. It is interesting to note that the Missouri Supreme Court, in spite of *Hoffmann,* has subsequently upheld prosecutions against owners for continued maintenance of non-conforming signs, observing that a regulation, rather than a taking, was involved and that some regulation was not offensive to organic law. See *University City* v. *Diveley Auto Body Co.,* 417 S.W. 2d 107 (Mo. 1967). *Concord Tp.* v. *Cornogg,* 9 Pa. D & C 2d 79, 43 Del. Co. 407, 48 Munic L.R. 202 (1956) is of doubtful viability in view of *Appeal of Smith Auto Co.,* 57 Munic L.R. 188, 79 York Leg. Rec. 145 (1965), reversed on other grounds 423 Pa. 493, 223 A. 683. *Hoffmann* was cited in *Blundell* along with seven other cases only for the statement that attempts to deprive the owner of a preexisting use of property have been regarded as a taking of property without compensation or in violation of due process of law and for the proposition that, insofar as legal principles are concerned, no distinction should be made between non-conforming use of buildings and non-conforming use of lands, as these property rights were entitled to the same constitutional protection.

Certainly the trend of judicial decisions is to approve the amortization theory as a necessary approach to the problem of non-conforming uses, if the termination provisions are directed toward legitimate zoning purposes. See, Annot, 22 ALR 3d 1134; *LaChapelle* v. *Goffstown,* supra.

Amortization is a period of grace given a property owner

---

[3]There was an amortization period of one year for junkyards in this case. There was none in the statute involved in *Arkansas State Highway Commission* v. *Turk's Auto Corp., Inc.,* 254 Ark. 67, 491 S.W. 2d 387. Other distinctions of the latter case are pointed out later in this opinion.

during which he is entitled to continue a non-conforming use and to amortize his investment in it and is not a substitute for just compensation in eminent domain, as appellees suggest. See *Art Neon Co.* v. *City & County of Denver*, 488 F. 2d 118 (10 Cir., 1973); *City of University Park* v. *Benners*, 485 S.W. 2d 773 (Texas, 1972), appeal dismissed for want of a substantial federal question, 411 U.S. 901, 93 S. Ct. 1530, 36 L. Ed. 2d 191. It is an adjunct of the police power exercised to eliminate non-conforming uses, which fully recognizes that the owner may have vested rights in the property. *Art Neon Co.* v. *City & County of Denver*, supra. It is, to Arkansas, a new manner of exercising the police power, the propriety of which must be determined by a rule of reasonableness which requires a weighing of the public interests and private rights in the light of the particular facts and circumstances involved. See *Art Neon Co.* v. *City & County of Denver*, supra; *City of University Park* v. *Benners*, supra. This is nothing more than that which is done in determining the validity of any attempted exercise of the police power by a legislative body, as I have earlier pointed out at some length. Recognizing this new manner of exercising the police power and testing it upon the rule of reasonableness as opposed to arbitrariness seem logical and harmonious with our decisions governing the exercise of the police power. This leaves the original discretion to determine the necessity for, and manner of exercise of, the police power where it belongs, i.e., in tne duly authorized legislative body, subject to the traditional judicial review. *Art Neon Co.* v. *City & County of Denver*, supra.

Appellees have failed to show that the ordinance is invalid as an arbitrary, rather than a reasonable, exercise of the police power. There is no evidence as to the extent of the effect of bringing such signs into conformity with the ordinance upon a business whose signs are now non-conforming. There is no evidence that the real property on which the signs are located would be damaged by a decrease in market value, or the extent to which business losses would be experienced. There is no evidence as to the cost of conforming such signs, except that three of the appellees say that the setback requirements will prevent any use of their *existing* signs at the end of the amortization period. These three signs originally cost from $5,811 to $10,000 and the sign of the other appellee cost $10,000. Estimated replacement cost ran

from $9,000 to over $20,000.[4] There is absolutely no evidence on the most important consideration, i.e., the remaining useful economic life of such non-conforming signs. See, *Grant v. Mayor & City Council of Baltimore*, 212 Md. 301, 129 A. 2d 363 (1957); *Naegele Outdoor Advertising Co. v. Village of Minnetonka*, supra, 281 Minn. 492. It only stands to reason that, at some future date because of obsolescence, depreciation, change in the character of the business conducted on the property or of the buildings and improvements thereon, that the useful life of all such signs will someday end. The word "amortization" actually came into use because the period specified for termination was designed to make some allowance for recoupment (or amortization) of the owner's investment. See *City of University Park v. Benners*, supra, 485 S.W. 2d 777. Yet there is no evidence to indicate that in the case of advertising signs, such as those involved, recoupment will not be complete in a seven year term.[5] The seven year amortization is longer than any other of which I am aware where advertising signs are involved. As a matter of fact I am unaware of any amortization period that allows more than seven years for termination of a non-conforming use except where a particular business becomes non-conforming. Even in those cases, it seems that the amortization period for junkyards does not exceed seven years.

Even an otherwise valid zoning ordinance may be un-constitutional and void as a taking of vested property rights without compensation as applied to particular property or a particular owner. *City of Little Rock v. Sun Building & Developing Co.*, supra, 199 Ark. 333. *Arkansas State Highway Comm'n v. Turk's Auto Corp., Inc.*, 254 Ark. 67, 491 S.W. 2d 387. Cf. *McClendon v. City of Hope*, 217 Ark. 367, 230 S.W. 2d 57. In considering this question, the zoning ordinance must be strictly construed in favor of the property owner. *Blundell v.*

---

[4]The testimony, which was by affidavit, was thoroughly and concisely summarized in the circuit judge's opinion, which was fully reproduced in appellant's abstract. Some facts not fully set out there were supplied in appellees' brief.

[5]In at least one case, *Naegele Outdoor Advertising Co. of Minnesota, Inc. v. Village of Minnetonka*, 281 Minn. 492, 162 N.W. 2d 206 (1968), the court recognized that during the amortization period the owners may derive some compensation by reason of the enjoyment of a monopoly due to the inability of competitors to erect non-conforming signs.

*City of West Helena,* supra, 258 Ark. 123. But even so, it appears to me that appellees have failed to meet their burden. Appellee's evidence falls far short of showing that the requirement, that the non-conforming use of advertising signs be terminated within seven years, is arbitrary or unreasonable as applied to them or any of them. Such a showing would be necessary to hold that there was an unconstitutional application of the ordinance to them, or any of them.

Appellees rely upon our cases involving junkyards. See *Arkansas State Highway Comm'n.* v. *Turk's Auto Corp., Inc.,* supra (also relied upon by the majority); *Foster* v. *Arkansas State Highway Comm'n.,* 258 Ark. 176, 527 S.W. 2d 601. But these cases are not controlling or even applicable. They are based to some extent upon the state's recognition in the governing act that, in certain instances, owners should be compensated. The particular applications of the act were held to be an unconstitutional deprivation of vested rights as applied to the particular owners. There was no provision in the act for an amortization period. If there had been, or should be, it is entirely possible that the same amortization period utilized here would be inappropriate, or that different results would be proper on the test of reasonableness. The natures of the business, of the use, and of the improvements are all pertinent factors in weighing reasonableness.

The judgment holding the ordinance unconstitutional as applied to appellees should be reversed.

I am authorized to state that Madam Justice Roy joins in this opinion.

DARRELL HICKMAN, Justice, concurring. Although I agree with the results the majority reached, I do not agree with all the reasoning or principles in the majority opinion.

First, the city's attempt by ordinance to regulate flashing signs is a proper exercise of government authority. This regulation is directly related to public safety and the cost to property owners in removing flashing signs is not relevant. *Springfield* v. *City of Little Rock,* 226 Ark. 462, 290 S.W. 2d 620 (1956).

Second, the ordinance regulating nonconforming signs and requiring their alteration or removal within seven years is valid on its face. A city has an obligation and duty to regulate any use of property that adversely affects the public. I am convinced that the great majority of cases will involve nominal, if any, expense in altering or removing signs to conform to the ordinance. However, this is a presumption that cannot be a blanket to cover every particular sign in existence at the time the ordinance is passed. In this case, these property owners offered evidence that they would be out a considerable amount of money if they had to alter or remove the signs. This evidence was not refuted by the city, and I have no alternative but to find on these facts the ordinance will amount to taking property without compensation in violation of the constitution. Art. 2, §§ 2 & 22, Constitution of Arkansas.

The regulation of signs by cities is long overdue and I believe the ordinance before this court is a reasonable effort to correct the problem within a reasonable period of time. However, the city cannot presume that the enforcement of this ordinance against existing signs will in every instance be successful.

The provision for amortization is, of course, a novelty in the law and the use of this ordinance will not in every case solve all of the sign problems that have accumulated through the years. The city must use good judgment and reason in enforcing the ordinance and be prepared in certain instances to offer evidence that a property owner's claim of damages is incorrect. However, if the courts find a property owner will be damaged to a substantial degree, then the owner's sign will have to stand or be removed by other lawful means.